**Paul KIEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 20A03–0105–CR–153.**

Court of Appeals of Indiana.

Jan. 28, 2003.

Rehearing Denied March 18, 2003.

J.J. Paul, III, Jennifer M. Lukemeyer, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Paul Kien appeals his jury convictions for three counts of Child Molesting, all as Class A felonies.[1] He presents several issues for our review, which we restate as:

I. Whether his constitutional rights were violated by the manner in which objections and arguments were made at the bench so that they could not be recorded;

II. Whether the evidence was sufficient to support the convictions;

III. Whether two suicide notes were improperly admitted for impeachment purposes;

IV. Whether the jury should have been instructed on a mens rea element for child molesting;

V. Whether the trial court relied upon improper aggravating and mitigating circumstances in sentencing; and

VI. Whether his sentence was inappropriate.

We affirm in part and reverse in part.

The incidents which led to the charges and the subsequent convictions arose out of allegations made by five-year-old J.F., the daughter of Kien's former live-in girlfriend. During an interview conducted by Lori Harrington at the Elkhart Child and Family Advocacy Center, which was attended by Detective Terry Chmiel of the Elkhart Police Department, J.F. alleged that Kien had put his penis and tongue on her vagina "a lot." Appendix at 13. J.F. stated that these incidents occurred either in her mother's bedroom or by the basement door. J.F. also stated that during one incident, Kien put his penis in her vagina and that it hurt. On another occasion, she stated, Kien had forced her to suck his penis. J.F.'s brother, B.D., also stated that he witnessed one episode of molestation between J.F. and Kien.

J.F. was examined by a physician, Lynette Valentijn, who found that J.F.'s hymen had been "disrupted," or rather, was no longer intact. Transcript at 30. She also noted that there was increased vascularity to the posterior fourchette, the area

---

1. Ind.Code § 35–42–4–3(a) (Burns Code Ed. Repl.1998).

beneath the hymen, which indicated that there had been a trauma which required more blood flow to aid in the healing process. A white mark was also present in the area, which could have been a scar from a cut. Dr. Valentijn testified that all of these conditions were abnormal and were not the types of injuries which could have been caused by such things as a fall on a bicycle seat. According to Dr. Valentijn, these findings were all consistent with sexual abuse with penetration.

On June 5, 2000, Kien was charged with one count of Child Molesting, alleging sexual intercourse. On November 3, 2000, two additional counts of Child Molesting were added. On January 23, 2001, the counts which were added on November 3 were amended to reflect that the second count alleged sexual intercourse and the third count alleged deviate sexual conduct by fellatio.

I

*Failure to Record Objections*

Kien alleges that his constitutional right to an appeal as provided by the Indiana Constitution, Article 7, Section 6, and his right to effective assistance of appellate counsel, as provided by the Due Process and Equal Protection Clauses of the United States Constitution, were violated by the manner in which the trial court requires counsel to make objections and argument upon those objections. Specifically, the trial court judge who conducted the trial requires that counsel argue objections at sidebar since they often make statements which should not be heard by jurors. However, due to the physical layout of the courtroom, it is still difficult to conduct a sidebar conference without the jury being able to overhear the content of the sidebar conference. Thus, in order to avoid being overheard, the participants in the sidebar conference must speak so softly that it is impossible to completely record everything which is said. Kien contends that it is improper to conduct the sidebar conferences in such manner that no accurate record can be made of the objections for purposes of appellate review.

The trial court judge did certify that his general practice is to inform counsel that sidebar conferences are not accurately recorded, and that if counsel requests, the jury will be excused so that an accurate record can be made with respect to any issue which counsel wishes to bring to the court's attention outside of the jury. However, Kien's trial counsel stated that he was not aware that this was the procedure or that the sidebar conferences would not be recorded. The trial court judge did believe that Kien's counsel was speaking truthfully when he stated that he was not aware of such a problem, and further, the judge could not swear that he had informed Kien's trial counsel of the normal practice in the courtroom for recording sidebar conferences.

Kien and his counsel did not learn until after the transcript had been completed for this appeal that the sidebar conferences were not recorded. Kien's appellate counsel then undertook efforts to reconstruct the missing portions of the transcript according to the procedure set forth in Ind. Appellate Rule 31. Appellate Rule 31(a) states:

> "If no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection. The party shall then file a motion to certify the statement of evidence with the trial court or Administrative Agency."

However, the parties could not agree upon the substance of each missing portion of the transcript, and the trial court judge submitted an affidavit certifying his recollection of the sidebar conferences. Kien then petitioned the trial court to certify all of the submitted verified statements and affidavits. The trial court refused to certify the statements but did order that they be made part of the record.

The basis for Kien's claim that his constitutional rights were violated is found in Ind. Criminal Rule 5. Criminal Rule 5 requires trial courts to arrange and provide for the recording of any and all oral evidence and testimony given in all cases and hearings, including both questions and answers, all rulings of the judge in respect to the admission and rejection of evidence and objections thereto, and any other oral matters occurring during the hearing in any proceeding. Kien claims that in this case, the trial court intentionally acted in a manner which he knew did not comply with the mandate of Criminal Rule 5. Kien asserts that because the transcript could not be reconstructed to include exactly what was said and occurred during the objections which were argued at sidebar conference, his ability to perfect his appeal and his right to appellate counsel were affected.[2]

In asserting that he should be given a new trial, Kien relies upon *Emmons v. State*, 492 N.E.2d 303 (Ind.1986), for support. In *Emmons*, the defendant had re-

quested that all courtroom proceedings, including voir dire, be recorded because there was a concern of juror bias caused by pretrial publicity. This request was denied by the trial court. Upon appeal, the defendant argued that the failure to record voir dire constituted an abuse of discretion and denied access to appellate counsel. In agreeing with the defendant's contentions, our Supreme Court determined that a new trial was necessary because reconstruction of the entire voir dire would have been a "Herculean task due to the numerous questions generally posed to a prospective jury panel." *Id.* at 305. The Court also stated:

> "Refusal to record the voir dire proceedings therefore deprived Emmons of appellate review of the specific issue which concerned him and any other errors which may have occurred. The underlying merits of these issues are of little moment when fundamental appellate rights have been denied by the trial court." *Id.*

While the failure to record the sidebar conferences in which the objections were made could have potentially resulted in the same deprivation of fundamental rights as our Supreme Court determined had occurred in *Emmons*, such is not the case here. Rather, we are guided by a more recent decision of our Supreme Court in determining that Kien has received the due process owed him.[3] In *Ben–Yisrayl v.*

2. Kien specifically claims that his appellate counsel could not adequately review the record to determine if the issue of effective assistance of trial counsel should be presented for review. Kien also claims that he cannot challenge the propriety of the trial court's rulings upon the objections because they do not exist in the record.

3. By no means should this decision be read as condoning the actions of a trial court which prevent the recording of the entire trial proceedings, especially objections made by the

parties and the trial court's rulings thereon as they are an integral, and often, the main issue presented for review by an appellate court. We do understand the trial court's frustration with the physical layout of the courtroom and incapability to rectify the problem of jurors overhearing matters to which they should not be privy because of the inability to find equipment, which is both effective and affordable, to record the sidebar conferences. We trust that the trial court will continue to make every effort to rectify such problems. In ad-

*State,* 753 N.E.2d 649 (Ind.2001), *cert. denied* —— U.S. ——, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002), our Supreme Court addressed the issue which is presented in this· case, i.e., whether flaws in the recorded transcript denied appellant due process and the right to meaningful appellate and collateral review. In *Ben–Yisrayl,* the problem originated from the inability of the court reporters, a record reconstruction specialist, and proofreaders to completely reconstruct the entire trial proceedings, leaving gaps and errors in the transcript.[4] In determining that a new trial was not warranted, the Court noted that each flaw in the record, when viewed in an overall context, was not sufficient enough to relieve Ben–Yisrayl of his burden of making specific claims of error. *Id.* at 662. As the Court further explained, "In each instance the subject matter of the discussion is sufficiently obvious from the record preceding and following the cited deficiency to allow specific claims of error."[5] *Id.* The Court also stated that no material defects were found in the record. *Id.*

However, while no violation of due process occurred, our Supreme Court did recognize that such errors posed problems for appellate review. While still requiring that the appellant articulate a plausible way in which he was harmed by the failure to record the proceedings in their entirety and to make specific claims of error, the

Court did state that failure to record the entire proceedings would make it unreasonable to require the appellant to show that any particular allegation of error was preserved for review by objection and proper argument. *Id.* at 660–61. The lack of record also justifies giving the appellant the benefit of the doubt in speculating about what may have been discussed during any of the unrecorded sidebars. *Id.* at 661.

Reviewing the transcript and the versions of the sidebar conferences submitted by each party and the trial court, the information available is sufficient for the parties to argue the issues upon appellate review and for this court to make informed decisions. Unlike in *Emmons,* reconstruction of the transcript was not a "Herculean task," for other than some minor variances in what was said, the parties and the trial court agree as to what occurred during the seven sidebar conferences. Read in context, each gap in the original recording can be understood and one can expand upon what was stated in the submitted versions of the sidebars to comprehend what may have occurred. Here, we emphasize that we will review Kien's further allegations of error with his view of what occurred at the sidebar conferences in mind. While we do not discount what was stated by the trial court or the prosecutor, we will not deem Kien's

---

dition, we direct the reader's attention to *In re the Marriage. of Anita Graddick,* 779 N.E.2d 1209 (Ind.Ct.App.2002), in which this court stated that courts of record should record all proceedings they conduct and encouraged courts, when no recording is being made, to secure on the record a waiver of recording to leave no doubt as to the status of the record in the minds of all those involved. This is especially applicable here, wherein the trial court stated that parties were normally informed off the record that the sidebar conferences may not be recorded.

4. In *Ben–Yisrayl,* just as in this case, the bench conferences were not recorded.

5. The Supreme Court also considered that Ben–Yisrayl's trial counsel also served as co-counsel for his appellate review in determining that Ben–Yisrayl could ascertain from the record what occurred during the bench conferences. Kien's trial counsel is not representing Kien upon appeal. However, trial counsel was involved in attempting to reconstruct the record of the sidebar conferences.

arguments waived for failure to raise an objection upon appropriate grounds if counsel stated that such ground was raised before the trial court and it appears from the record that such was possible.

Based upon the sufficiency of the transcript for review, Kien was not deprived of his right to appeal or of effective assistance of appellate counsel for failure to be able to argue issues upon appeal.

## II

### Sufficiency of the Evidence

Kien asserts that the evidence presented to the jury did not support convictions for two counts of child molesting by sexual intercourse. He states that at most, the evidence only demonstrated that one act of sexual intercourse took place. He also asserts that J.F.'s testimony regarding the act of sexual intercourse was incredibly dubious.

■■■■■ Our standard of review for a sufficiency of the evidence claim is well settled. We will not reweigh the evidence or judge the credibility of the witnesses. *VanMatre v. State,* 714 N.E.2d 655, 657–58 (Ind.Ct.App.1999). We will consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* at 657. We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* at 658. Reasonable doubt is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence. *Chambers v. State,* 551 N.E.2d 1154, 1156 (Ind.Ct.App.1990).

■■■■ We will not impinge upon the jury's resolution with regard to the credibility of witnesses unless confronted with testimony of inherent improbability, or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Heeter v. State,* 661 N.E.2d 612, 615 (Ind.Ct.App. 1996). A conviction will be overturned only where a victim's testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. *Id.* However, this exception is applied only where a single witness testifies. *Bowles v. State,* 737 N.E.2d 1150, 1152 (Ind.2000).

In testifying about the alleged incidents of sexual intercourse, J.F. testified that Kien put his "pee-pee" inside her "pee-pee." Tr. at 58. The prosecutor then sought to establish the number of occasions upon which the alleged sexual intercourse took place through the following colloquy:

"[State] Do you remember how many times it happened?

[J.F.] No.

[State] Did it happen more than one time?

[J.F.] Yeah.

[State] Did it happen at least two times?

[J.F.] Yeah." *Id.*

Other than an additional question asked of J.F. emphasizing that the alleged incidents. occurred at least twice, no other testimony or evidence was presented which would indicate that two acts of child molesting by sexual intercourse were committed.

■■■■ Taking this testimony in context, it is possible that a different jury could have agreed with Kien's claim that no more than one act of sexual intercourse was performed. J.F.'s testimony is subject to differing inferences in that her testimony may have been referring to a single episode when she was in her mother's bedroom with Kien, and Kien subsequently

inserted his penis into her vagina more than once in the matter of a few seconds. However, her testimony could also reasonably be interpreted to mean that either on two separate occasions, whether on different days or after a lapse of time between incidents, Kien inserted his penis into her vagina. While this testimony was not developed as fully as it could have been, given that the witness was a six-year-old child, one may most appropriately infer that J.F. was referring to two discrete acts of penetration and sexual intercourse. Because a jury could properly interpret J.F.'s testimony as two separate incidents of sexual intercourse, as the jury did in this case, we cannot say that there was no substantial evidence of probative value from which the jury could determine that Kien was guilty of two counts of child molesting by sexual intercourse. In addition, in reaching its decision, the jury had to determine that J.F. was a credible witness and that the testimony that the acts of sexual intercourse occurred at least twice was truthful.

■■■ In claiming that the testimony of J.F. was incredibly dubious, Kien argues that her testimony was equivocal and the result of suggestion at the hands of whoever was questioning her. We first address his contention that she answered questions posed to her based upon suggestion through leading questions. Leading questions may be used during direct examination to develop the testimony of certain witnesses, including children. *Williams v. State,* 733 N.E.2d 919, 922 (Ind.2000). While it is a concern that a child such as J.F. could be led into making certain accusations based upon the questions asked, that is an issue to which the jury was made aware based upon the testimony of Dr. Valentijn.[6] Further, Kien's trial counsel aptly questioned J.F., drawing out the inconsistencies in her testimony, and when J.F.'s answers given during cross-examination were different than her answers given on direct examination, J.F. admitted that she had lied in answering the questions on cross-examination. These issues of witness credibility were before the jury, and the jury ultimately chose to believe J.F. We will not second-guess the jury's determination that J.F. was a credible witness.

Further addressing Kien's claim, the rule of incredible dubiosity does not apply under the circumstances of this case. J.F.'s testimony may have been somewhat equivocal in that it was subject to various interpretations. However, her testimony was not inherently improbable and did not run counter to human experience. There was also circumstantial evidence which supported the allegation that she was sexually abused through penetration, although this evidence did not indicate the number of times in which she was abused through sexual intercourse. Once again, we emphasize that the jury was aware of the consistency problems within J.F.'s testimony. Under these circumstances, the testimony of J.F. was not incredibly dubious. *See Dillard v. State,* 755 N.E.2d 1085, 1089 (Ind.2001) (holding that the rule of incredible dubiosity did not apply even though the testimony of the witness was possibly equivocal and was somewhat inconsistent).

### III

#### *Admission of Suicide Notes*

Upon cross-examination, the Prosecutor asked Kien whether he had been suicidal following the break-up of his marriage. Kien answered that he had not. The State then produced copies of two suicide notes

---

**6.** Dr. Valentijn, in answering questions during cross-examination, indicated that young children are subject to suggestibility after repeated questioning and through responding to leading questions.

which Kien admitted that he had written. Kien's counsel made several objections to the introduction and admission into evidence of the suicide notes.[7] One of these was that the State was attempting to impeach Kien upon a collateral matter.

■ Impeachment upon collateral matters is impermissible. *Jackson v. State*, 728 N.E.2d 147, 153 (Ind.2000) (addressing that the common law rule preventing impeachment upon collateral matters was still valid following the adoption of the Indiana Rules of Evidence). The determination of whether a matter is collateral depends upon whether the offering party would be entitled to prove it as part of the case in chief, apart from the contradiction it supplies. *Andrews v. State*, 529 N.E.2d 360, 365 (Ind.Ct.App.1988), *cert. denied* 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989). In other words, the question is whether the evidence is admissible for any purpose independent of the contradiction of the witness. *Id.* A party may inquire into a collateral matter on cross-examination. *Highley v. State*, 535 N.E.2d 1241, 1243 (Ind.Ct.App.1989), *trans. denied.* However, the questioner is bound by the answer received and may not impeach the witness with extrinsic evidence unless the evidence would be independently admissible. *Id.* When evidence is used in a manner solely to prejudice a jury against the witness and is not material to the litigation, the evidence is referred to as an "evidentiary harpoon" and its admission is improper. *Henson v. State*, 530 N.E.2d 768, 770 (Ind.Ct.App.1988), *trans. denied.*

■ The State does not present any valid reason which was relevant to the litigation to argue that it was proper for the suicide notes to be introduced and admitted into evidence. In fact, in its brief, the State argues only that any error in the admission was harmless. Addressing the merits of Kien's claim, we find no valid and relevant reason for the State to have introduced the suicide notes into evidence. The State did not attempt to link any thoughts of suicide to the alleged crimes of child molesting.[8] Instead, in closing argument, the Prosecutor focused upon Kien's original denial of being suicidal to question Kien's credibility.

While the Prosecutor could have asked Kien whether he was ever suicidal, once Kien had answered that he had not been, the State was bound by that answer. The suicide notes should not have been admitted. *See Id.* at 769–70 (holding that it was improper for the State to produce witnesses to impeach the defendant's claim that she had not had an affair which was sexual in nature when that issue was not material to the matter in litigation).

■ However, while it was improper to allow the introduction and admission of the suicide notes, errors arising from an attempt to impeach a witness upon collateral matters are subject to harmless error analysis. *Benson v. State*, 762 N.E.2d 748, 752 (Ind.2002). An error in the admission of evidence must be inconsistent with substantial justice to constitute grounds for reversal. Ind. Trial Rule 61; *Benson*, 762 N.E.2d at 752. Any error which does not affect the substantial rights of a party will

---

**7.** As discussed above, we will give Kien the benefit of the doubt regarding what was discussed during the unrecorded sidebar conferences. However, it is clear from the transcript that Kien's counsel made several proper objections to the introduction of the suicide notes.

**8.** Neither of the two notes contain any implication that Kien's contemplated suicide stemmed from a sense of guilt with regard to the alleged offenses.

be disregarded by the reviewing court. *Benson,* 762 N.E.2d at 752.

In this case, the jury was presented with evidence from the testimony of the child-victim who indicated that Kien had forced her to have sexual intercourse and perform fellatio on him. Her brother, who was a witness to the act of fellatio, corroborated her story. Medical evidence was provided which was consistent with sexual abuse by penetration. While the evidence indicating that Kien had contemplated suicide did draw into question his credibility, it was only one issue challenging his credibility. Kien's testimony at trial took a significant amount of time and provided the jury with an opportunity to witness first-hand the character of Kien and to assess his credibility with the evidence of the suicide notes counting as only a small portion of their consideration. Based upon these considerations, Kien's substantial rights were not violated by the introduction and admission of the evidence on the collateral matter of Kien writing two suicide notes.

## IV

### *Jury Instruction on Mens Rea*

Kien claims that the trial court committed fundamental error by failing to instruct the jury on the requisite mens rea element for the crime of child molesting by sexual intercourse and deviate sexual conduct. He contends that the jury should have been instructed that the State must prove that he intended to "arouse or satisfy the sexual desires of the child or the defendant." Appellant's Brief at 28–29. Little needs to be said regarding this contention as our Supreme Court has addressed this precise question since the time that the briefs were filed in this appeal.

In *D'Paffo v. State,* 778 N.E.2d 798, 800 (Ind.2002), our Supreme Court noted that Ind.Code § 35–42–4–3(a) contains only four elements which the State must prove to establish guilt for child molesting: (1) the defendant, (2) with a child under fourteen years of age, (3) performed or submitted to, (4) sexual intercourse or deviate sexual conduct. Our Supreme Court then held that " 'intent to arouse or satisfy sexual desires' " is not an element of the crime of child molesting which is committed by sexual intercourse or deviate sexual conduct. *Id.* at 801. Rather, it was determined that our legislature intended to criminalize all sexual intercourse and deviate sexual conduct with children. *Id.* However, it is also well established that as a requirement for a conviction for child molesting, the State must prove that there was criminal intent on the part of the defendant. *Id.* at 802. "Where the evidence warrants an inference that an alleged penetration of the sex organ or anus of a person by an object was in furtherance of a bona fide medical or personal hygiene-related examination or procedure," the defendant is entitled to an appropriate instruction on criminal intent. *Id.* Just as in *D'Paffo,* the issue was not presented in this case that the acts were committed as part of a medical or personal hygiene-related procedure; rather, Kien denied that he committed the alleged conduct at all. Therefore, no instruction on intent to arouse or satisfy was warranted.

## V

### *Aggravating and Mitigating Circumstances*

Sentencing lies within the discretion of the trial court. *Powell v. State,* 751 N.E.2d 311, 314 (Ind.Ct.App.2001). Sentencing decisions are reviewed only for an abuse of discretion. *Id.* When a trial court enhances a sentence, the trial court

is required to state its specific reasons for doing so. *Id.* The sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating or mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine that the aggravators outweigh the mitigators. *Id.* at 315. We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *Id.* A sentence enhancement will be affirmed in spite of a trial court's failure to specifically articulate its reasons if the record indicates that the court engaged in the evaluative processes and the sentence imposed was not manifestly unreasonable. *Id.*

A single aggravating circumstance may be sufficient to enhance a sentence. *Hatchett v. State,* 740 N.E.2d 920, 929 (Ind.Ct.App.2000), *trans. denied.* A sentence enhancement may still be upheld when a trial court improperly applies an aggravator but other valid aggravators exist. *Id.*

### A. Aggravating Circumstances

Kien makes several challenges to his sentence by asserting that the trial court relied upon improper aggravating circumstances. He contends that the trial court erred in considering as aggravators that there were several incidents of molestation, that Kien maintained his innocence, that another child witnessed one of the acts of molestation, and that the victim was four or five years old when the molestation occurred.

### 1. Several Incidents of Molestation

Kien alleges that the trial court erred in considering that Kien molested J.F. "on multiple occasions." App.

at 134. The State concedes that the trial court's reliance upon this factor may have been improper in this case. We agree. A fact which comprises a material element of a crime may not also be used as an aggravating circumstance to support an enhanced sentence. *Stewart v. State,* 531 N.E.2d 1146, 1150 (Ind.1988). Here, Kien was charged with three counts of child molesting. Evidence was presented which indicated that Kien committed only three acts of child molesting. Therefore, Kien was convicted for each act which was alleged. The trial court should not have considered that several acts of molestation were committed when Kien was convicted of each act.

However, the trial court also appears to have elaborated upon this aggravator in considering the ongoing nature of the acts and the effect that they had upon J.F., in addition to what they revealed about Kien's character. While the acts were alleged to have been committed in one month's time, one could reasonably infer from the evidence that a period of time elapsed between at least two of the incidents, if not all three, which would have given Kien an opportunity to reflect upon his conduct and the harm he was causing J.F. This is a proper consideration for the trial court to make upon the number of offenses which Kien committed.

### 2. Maintaining of Innocence

Kien also asserts that the trial court erred by considering that Kien maintained his innocence, both at trial and in evaluations with a psychologist. In its sentencing statement, the trial court spent a considerable amount of time focusing on Kien's denial of guilt when he took the stand in his own defense. The court stated:

"The Court finds that the Defendant's untruthful testimony at trial is a further aggravating circumstance. The Court emphasizes that it recognizes that penalizing the Defendant for the exercise of his rights to trial and to testify on his own behalf would be grossly improper, and the Court is not doing so. In his testimony, the Defendant adamantly denied any inappropriate touching of [J.F.]. He also asserted that [her brother] did not see what the boy testified that he had observed. The jury did not believe the Defendant—if it had, the Defendant would have been acquitted. The Court joins in the assessment of the jury. While the Defendant has a right to trial, and a right to testify in support of his own cause, he does not have a right to testify falsely. The fact that he did so is an aggravator." App. at 135. In reaching this conclusion, the trial court relied upon *Shields v. State*, 699 N.E.2d 636 (Ind.1998). In *Shields*, our Supreme Court noted that a trial court could consider a defendant's perjury when the defendant fails to give a fully truthful account of the crime. *Id.* at 639.

 This court has also had the opportunity to address the issue of whether the denial of guilt by a defendant is a proper aggravator. In *Bluck v. State*, 716 N.E.2d 507, 512 (Ind.Ct.App.1999), this court noted that a defendant has the right to maintain his innocence through all stages of the criminal proceeding, including sentencing. As stated in *Bluck*, it is not an aggravating factor for a defendant, in good faith, to consistently maintain his innocence. *Id.* The court then further discussed that lack of remorse by a defendant who maintains his innocence may be regarded as an aggravator. *Id.* at 513.

However, when the defendant maintains his innocence and the only evidence of guilt is the victim's uncorroborated testimony, maintaining one's innocence may not be used as an aggravator. *Id.* Applying that principle, the court then held that the use of lack of remorse was proper when the victim's testimony was corroborated by the admission of the results of a polygraph test which Bluck failed. *Id.*

In *Hollen v. State*, 740 N.E.2d 149 (Ind. Ct.App.2000), *opinion adopted by* 761 N.E.2d 398 (2002), this court reviewed the inclusion of lack of remorse as an aggravator in a case in which the defendant was convicted of battery of a law enforcement officer.[9] Hollen maintained that he was innocent and that he fought with the deputy only after he was struck by the deputy without provocation. The deputy's story was corroborated by the deputy's brother-in-law, who had accompanied the deputy. This court held that even though there was corroborating evidence of the defendant's guilt, it did not necessarily follow that the defense was maintained in bad faith and therefore subjected the defendant to an enhanced sentence. *Id.* at 159. To do so would be to subject a defendant to an enhanced sentence whenever he maintained his innocence and lost. *Id.*

 In this case, we are faced with a situation in which there was corroborating medical evidence that J.F. had been subject to sexual abuse with penetration. However, Kien did not dispute that J.F. had been sexually abused, only that he was not the guilty party. J.F.'s brother testified that he witnessed the act of fellatio between Kien and J.F.; however, no other witness or evidence, other than J.F.'s testimony, linked Kien to the crimes. These

9. In *Hollen,* the defendant argued that the trial court considered his assertion of inno-

cence as lack of remorse.

facts closely resemble those in *Hollen,* and in this case, we must agree that the trial court should not have relied upon his maintaining his innocence as an aggravator. Our case differs from the situation in which the defendant confesses to the crime, there is physical evidence indicating defendant's guilt, or there is substantial testimony from the victim and witnesses which strongly indicate that the defendant is guilty. Although there was testimony indicating that Kien committed the acts, it was not so overwhelmingly condemning that we can say that Kien maintained his innocence in bad faith.

Turning to the trial court's reliance upon Kien's denial of guilt during his psychosexual evaluation, the trial court agreed with the psychologist's determination that working under the presumption that Kien was guilty, his continued denial of guilt prevented him from being a good candidate for therapeutic intervention. In conjunction with this, the trial court also agreed with the assessment that Kien would have to be a committed pedophile to commit the acts as he did.

Once again, the reliance upon Kien's denial of guilt is concerning. While the psychologist's conclusions are very logical, they are based upon the "presumption that Mr. Kien is guilty" and take into account facts which are portrayed as black and white, but which are more accurately described as being shades of gray. App. at 107. As previously stated, this is not the case where the evidence is clearly and overwhelming indicative of guilt. While the evidence is sufficient to convince this court that the incidents of sexual abuse occurred, the identification testimony turns solely upon the testimony of the victim for two counts and upon her and her brother's testimony for the third count. To hold that the denial of guilt is an aggravating factor, in light of the right of a defendant to maintain his innocence through sentencing, and in the knowledge that the defendant is going to appeal upon the sufficiency of the evidence to sustain the conviction, would be unfair to the defendant.

Further, the psychologist's conclusions were based in part upon the numerous occasions in which Kien had "sexual intercourse and oral sex with a five-year-old." *Id.* As discussed, three acts of sexual abuse were alleged and evidence for only three acts was presented. We do not discount the psychologist's conclusions, and agree that this may indicate that Kien is a committed pedophile, but also note that the psychologist believed that Kien was not necessarily a predatory individual who would go out and seek "stranger" victims. *Id.* While it was not improper for the trial court to consider that these acts indicated that Kien was a committed pedophile, the trial court should not have relied upon that portion of the psychologist's evaluation which was based solely upon Kien's denial of guilt.

### 3. Effect on Child Witness

██ Kien asserts that the trial court erred in considering the impact that the molestation had on J.F.'s brother, who witnessed the act of fellatio. Neither Kien nor the State has provided any legal guidance to this court in determining whether this is a proper aggravator. Our own review of the sentencing statutes and case law has led us to conclude that the trial court's consideration of this factor was proper.

Indiana Code § 35–38–1–7.1(a)(5) (Burns Code Ed. Supp.2002) requires the trial court to consider whether the offense was committed in the presence of or within hearing of a person who is less than eighteen years old. At trial, B.D. testified that he was ten years old, well within the age limit set by statute. Further, in *Ajabu v.*

*State,* 722 N.E.2d 339, 344 (Ind.2000), our Supreme Court noted that a trial court could consider the non-statutory aggravating factor of the psychological and emotional effects on the victim's family. In *Smith v. State,* 770 N.E.2d 818, 821–22 (Ind.2002), our Supreme Court noted that the impact of a crime upon others may be considered as an aggravator when the defendant's actions had an impact on the other person of a destructive nature that is not normally associated with the commission of the crime in question and which impact must have been reasonably foreseeable by the defendant.

■ Kien attempts to draw a distinction between crimes committed with the knowledge that a witness is present and those in which a witness sees the crime committed without the knowledge of the perpetrator. In his view, it would be proper to consider the commission of the crime in the presence of a witness if the perpetrator had knowledge of the witness's presence under the aggravating factor of "nature and circumstances of the crime." We see no reason to draw such distinction. None of the authorities upon which we have relied indicate that such should be considered. Indeed, it is irrelevant whether the perpetrator knew that witnesses were present. Whether the perpetrator is aware of the presence of the witness, when the circumstances are such that other persons are in the area, the perpetrator may be held to the consequences of the unanticipated observation. The knowledge of the perpetrator does nothing to diminish the impact on the witness. What is of concern is whether the impact here was of a type not normally associated with the crime committed and whether the impact was foreseeable to the defendant. *Id.* While every family member of a victim of child abuse is likely to be harmed by the act, it is not beyond the reaches of common sense

for one to expect a family member, who is a young child himself, to be more severely affected when he has been a witness to his young sister's molestation.

#### 4. Age of Victim

■ Kien also claims that the trial court erred in utilizing the age of the victim as an aggravator in this case. Indiana Code § 35–42–4–3 requires that the victim be a child under fourteen years of age. Because the age of the victim is a material element of the crimes for which Kien was convicted, it would be improper for the trial court to rely solely upon the age of the victim as an aggravator. *See Stewart,* 531 N.E.2d at 1150. However, the trial court may properly consider the particularized circumstances of the material elements of the crime. *Id.*

■ In *Stewart,* our Supreme Court held that the trial court properly utilized the age of the victim in a child molesting case as a proper aggravating circumstance, in addition to other aggravating circumstances, when the trial court considered that the victim was of "tender age." *Id.* Likewise, in *Buchanan v. State,* 767 N.E.2d 967, 971 (Ind.2002), our Supreme Court found that it was proper for a trial court to rely upon the age of a victim of child molesting when the trial court noted that the victim was of particularly tender years. In this case, the trial court not only relied upon the age of J.F., but specifically noted that a four or five-year-old child is extremely vulnerable to sexual predation because of her "tender years." App. at 135. The trial court did not err in considering J.F.'s age.

#### B. Mitigating Circumstances

Kien also alleges that the trial court failed to consider a significant mitigating factor. Kien specifically asserts that the trial court failed to consider the significant

number of letters which the trial court received from members of the community on behalf of Kien.

The trial court's written sentencing statement made no mention of the letters written on behalf of Kien; in fact, the written sentencing order clearly stated that Kien's "lack of prior criminal record is the sole mitigating circumstance." *Id.* However, the trial court's oral sentencing statement indicated that the significant number of letters which the trial court received did cause the trial court to review the transcript of the testimony to determine whether the jury's verdict and his initial assessment that Kien was guilty were correct. Nonetheless, it does not appear that the trial court considered the letters as a mitigating circumstance.

 The trial court is not required to find mitigating factors or to accept as mitigating the circumstances proffered by the defendant. *Powell*, 751 N.E.2d at 317. " 'Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was overlooked.' " *Id.* (quoting *Legue v. State*, 688 N.E.2d 408, 411 (Ind.1997)).

 In this case, each of the thirteen letters spoke highly of Kien. Given the number of letters, and their reflections on Kien's character, there is no doubt that the letters carried some mitigating weight. Although we do not hold that the letters constituted a significant mitigator, neither can we say they were not worthy of consideration with some mitigating effect. Because the trial court did not mention that the letters were considered as a mitigating factor, we can only assume that they were "overlooked" for that purpose. Under the circumstances as presented here, the trial court should have considered the letters as a mitigating circumstance.[10]

### C. Weight of Aggravators and Mitigators

 Kien asserts that the trial court could not have accurately weighed the mitigating factors against the aggravating factors. Because we have determined that several aggravating factors were improper, and because one mitigating factor was excluded, this court must determine whether the trial court could have properly enhanced Kien's sentence.

Following the above analysis, several aggravating factors are still present upon which we can rely in determining whether Kien appropriately received an aggravated sentence. Specifically, the trial court properly relied upon what the commission of the separate crimes of molestation revealed about Kien's character when he had time to reflect upon the harm he was causing to J.F., that J.F.'s brother witnessed one of the acts of molestation which had an extreme effect upon him, that J.F. was of tender years, that Kien violated a position of trust, and that J.F. suffered both psychological and physical injury as a result of the molestation.[11] However,

---

10. We do commend the trial court for taking a second look at the evidence because of the significance of the letters. Had the trial court not stated that the lack of criminal history was the sole mitigator, this court would have been hard-pressed to conclude that the trial court did not consider the weight of the letters in some respect given the ample amount of time in which they were discussed.

11. Kien did not challenge the propriety of the trial court relying upon the violation of the children's trust or that J.F. suffered psychological and physical harm. Kien asserts in his brief that the trial court considered the violation of the position of trust as part of the consideration of the number of times in which the molestation occurred. However, this assertion is not supported by the sentencing statement. The trial court clearly relied upon

**416**

these aggravating factors must be weighed against the mitigating factors of Kien's lack of criminal history and what the significant number of letters revealed about Kien's character. Even in light of the mitigating letters as to Kien's character, we conclude, as did the trial court, that the appropriate aggravating factors outweigh the mitigating factors. Nevertheless, as Kien has also asserted that his sentence is manifestly unreasonable, we will address sentencing further in the following section under an inappropriate sentence analysis.

## VI

### Inappropriate Sentence

■ A sentence which is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B);[12] When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive sentence. *Hildebrandt v. State*, 770 N.E.2d 355, 361 (Ind.Ct.App.2002), *trans. denied.* Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors which must be considered pursuant to Ind.Code § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Hildebrandt*, 770 N.E.2d at 361.

The presumptive sentence for a Class A felony is thirty years, with the addition of an additional twenty years for aggravating circumstances. Ind.Code § 35–50–2–4 (Burns Code Ed. Repl.1998). Here, Kien received forty years for each conviction,

with the sentences to run consecutively for an aggregate sentence of one hundred twenty years.

■ Just as stated above, Kien's sentence was appropriately enhanced as the aggravating factors which applied to these crimes outweighed the mitigating factors. Therefore, the forty-year sentence for each conviction was not inappropriate. It was also not inappropriate for the trial court to order that the sentence for the conviction for child molesting by deviate sexual conduct run consecutively to the sentences for child molesting by sexual intercourse. However, it is inappropriate, under the facts of this case, to order that the sentences for the two convictions for child molesting by sexual intercourse be served consecutively.

As stated previously in the discussion of whether the evidence was sufficient to support the conviction, we determined that the evidence, while sufficient beyond a reasonable doubt to determine that two acts of sexual intercourse took place, was also subject to an inference that the acts may have taken place in close proximity in time. Because the evidence did not necessarily establish that the acts occurred at significantly different times with Kien having time to reflect upon the heinous nature of the crimes committed, ordering that Kien serve consecutive sentences for the two convictions for child molesting by sexual intercourse is inappropriate. We do not intend to depreciate the seriousness of the crimes committed; however, the evidence does not support a ten-year enhancement and consecutive sentences for each crime.

the violation of the position of trust as a separate aggravator.

12. On July 19, 2002, our Supreme Court amended Appellate Rule 7(B) effective January 1, 2003. The rule is directed to the reviewing court and sets forth the standard for

that review. That review is made as of the date the decision or opinion is handed down. Accordingly, although the sentence here was imposed prior to January 1, 2003, our review has taken place as of this date and the "inappropriate" test is therefore applied.

The trial court is ordered to amend Kien's sentencing order to reflect that the sentences for Counts I and II, the convictions for child molesting by sexual intercourse, be served concurrently. The sentence is affirmed in all other respects.

*Conclusion*

While concerns are raised by the failure to record the sidebar conferences in which objections are made and argued, the procedure for supplementing the transcript as provided by the trial rules allowed Kien to perfect his appeal and receive effective assistance of counsel. The evidence presented at trial was sufficient to support all three convictions. While the trial court erred in allowing the introduction and admission into evidence of two suicide notes written by Kien as they related to a collateral matter, the error was harmless. Kien was not entitled to an instruction on an intent to arouse or satisfy sexual desires element of child molesting as that intent was not at issue in this case. Finally, the trial court did err in considering certain aggravating circumstances and · failing to consider a mitigating factor. The presumptive sentence for each conviction was appropriately enhanced by ten years; however, it was inappropriate to order that Kien serve consecutively the sentences for the two convictions for child molesting by sexual intercourse.

The judgment is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

BAILEY and MATHIAS, JJ., concur.