**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 22 2012, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD R. SHULER**
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL A. AYERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1201-CR-52 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1106-FA-10

**August 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Following a jury trial, Appellant-Defendant Michael Ayers appeals his conviction for Class A felony Attempted Murder,[1] for which he received a sentence of forty-eight years in the Department of Correction. Upon appeal, Ayers challenges the sufficiency of the evidence to support his conviction and claims that his sentence is inappropriate. We affirm.

## FACTS AND PROCEDURAL HISTORY

On May 17, 2011, at approximately 11:50 a.m., Elkhart Police Officer Chris Snyder responded to a report of a shooting in the Washington Gardens neighborhood of Elkhart. The shooter was reportedly wearing a black sweatshirt and chasing another male wearing a red sweatshirt. Upon arriving at the scene, Officer Snyder observed a male wearing a red sweatshirt lying on the floor with shotgun wounds. The victim, who was subsequently treated at a hospital for shotgun wounds, was later identified to be Charles Peete, Jr.

According to Peete, there had been an altercation the day before at which he, his friend Mumbles, and a certain Necko Purnell were present, among others totaling approximately sixty people. Purnell was a friend of Ayers's. Mumbles and Purnell apparently fought, after which Peete and Mumbles left the altercation, picked up Peete's cousin, and returned to the crowd. Another fight broke out between Purnell and Mumbles, which ultimately ended in a standoff.

The morning of May 17, Peete and Aisha Johnson had observed a white four-door vehicle with tinted windows drive past them a couple of times and park, at which point

---

[1] Ind. Code §§ 35-42-1-1; 35-41-5-1 (2010).

2

two males jumped out and approached him.  Less than two weeks prior, Alyssa Wilcox had sold Purnell a white four-door vehicle with tinted windows.  As Peete walked away the morning of May 17, a third person jumped out of the car, walked a short distance before returning to the car for a shotgun, and shot Peete, hitting him in the chest and stomach.  Peete had his hands in the air and was backing away, facing the shooter, at the time.  Peete attempted to run behind a building but was shot again in the legs and twice in the back.  Peete entered his friend Ebony Dye's apartment and called for help.  After Peete was transported to the hospital, he was presented with a photographic array, from which he identified Ayers as his shooter.

Just prior to the shooting, Ayers's cousin Jimmy Mack, who was staying in an adjacent apartment building, saw Ayers, Purnell, and Ayers's brother D'Angelo Daniels step out of a white four-door vehicle.  Ayers was dressed in black.  Shortly after the shooting, Daniels entered the apartment where Mack was staying, as did Purnell and Ayers.  Ayers was holding a large black gun resembling a shotgun.  Ayers and Purnell left shortly thereafter.  A white car was seen leaving the area after the shooting.

Authorities subsequently recovered a shotgun at Mack's apartment.  The shells recovered from the scene were determined to have been fired from this shotgun.  The shells contained twenty-gauge shot, which, although typically used for hunting birds and small animals, could kill a deer, especially if shot multiple times.

Peete suffered multiple injuries as a result of the shootings, including multiple penetration wounds leaving gunshot pellets inside his body, a collapsed lung, a lacerated kidney, injuries to his liver and spleen, possible nerve damage, and a fractured hand.

Given the number of gunshot wounds he had sustained, Peete was described by his treating physician to have been "very lucky." Tr. p. 472.

On June 27, 2011, the State charged Ayers with Class A felony attempted murder. At the December 19-21, 2011 trial, Peete and Johnson positively identified Ayers as Peete's shooter. Following the jury's guilty verdict, the trial court entered judgment of conviction and sentenced Ayers on January 19, 2012, to an executed sentence of forty-eight years in the Department of Correction. This appeal follows.

## DISCUSSION AND DECISION

### I.    Sufficiency of the Evidence

Ayers first contends that the evidence is insufficient to support his conviction for attempted murder. Ayers's challenge is two-part: he argues that (1) the evidence fails conclusively to point to him as the shooter; and (2) there was an inadequate showing of specific intent to kill.

When evaluating the sufficiency of the evidence to support Ayers's conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Kien v. State,* 782 N.E.2d 398, 407 (Ind. Ct. App. 2003), *trans. denied.* We consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* It is the function of the trier of fact to resolve conflicts of testimony and to

4

determine the weight of the evidence and the credibility of the witnesses. *Jones v. State*, 701 N.E.2d 863, 867 (Ind. Ct. App. 1998).

## A. Identification

Significantly, the uncorroborated testimony of one witness, even the victim, is sufficient to support a conviction. *Ferrell v. State*, 565 N.E.2d 1070, 1072-73 (Ind. 1991). Here, there was ample evidence, including identification testimony by more than one witness and substantial circumstantial evidence, to implicate Ayers. Ayers was identified as the shooter by both the victim, Peete, who made repeated identifications, and by Johnson, who was at the scene. Ayers's clothing matched the shooter's, and he was seen in a vehicle resembling the getaway car shortly before the shooting. Just after the shooting, Ayers was in possession of what appeared to be a shotgun in the vicinity of the shooting, at an apartment where the shotgun used to shoot Peete was ultimately found. This evidence, and all reasonable inferences therefrom, soundly implicates Ayers as the shooter. Ayers's challenge is merely an invitation to reweigh the evidence, which we decline.

## B. Specific Intent

Ayers claims that the use of twenty-gauge birdshot demonstrates that he did not have specific intent to kill. In a prosecution for attempted murder, the State must show a specific intent to kill. *Kiefer v. State*, 761 N.E.2d 802, 805 (Ind. 2002). Intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime. *Id.* In addition, the trier of fact may infer intent to kill from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Id.*

5

The record demonstrates that birdshot, while perhaps more generally used to kill birds, can also kill a deer-sized animal at close range. Of course, even BB guns can be deadly weapons when used in a manner to inflict serious injury. *See Davis v. State*, 835 N.E.2d 1102, 1112 (Ind. Ct. App. 2005), *trans. denied*. Here, Ayers shot Peete at close range four times, riddling his body, including his chest and abdomen, with pellets. Peete suffered life-threatening injuries, including a punctured lung, a lacerated kidney, and liver and spleen injuries. His treating physician described him as "very lucky." We are convinced that there was ample evidence to support a finding of Ayers's specific intent to kill Peete.

## II. Sentence

Ayers additionally claims that his sentence, which was enhanced by eighteen years, was inappropriately harsh. Article VII, Sections 4 and 6 of the Indiana Constitution "'authorize[] independent appellate review and revision of a sentence imposed by the trial court.'" *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006) (emphasis and internal quotations omitted)), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). Such appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that the "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique

6

perspective a trial court has when making sentencing decisions. *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). It is the defendant's burden to demonstrate that his sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

Ayers committed a Class A felony, which carries an advisory sentence of thirty years and a maximum sentence of fifty years. *See* Ind. Code § 35-50-2-4 (2010). In imposing an enhanced forty-eight-year sentence, the trial court identified multiple aggravating factors, including Ayers's ten prior juvenile cases, one involving robbery;[2] the fact that prior efforts to reform him had failed; Ayers's repeated probation violations and failure to appear for court; Ayers's marijuana use; the fact that Ayers shot his victim four times at close range while the victim fled; the fact that a woman and children were in the area at the time of the shooting; Ayers's total lack of remorse;[3] and the escalation in the gravity of Ayers's offenses. In appealing the enhancement of his sentence by eighteen years, Ayers argues that the circumstances of his crime are relatively unremarkable, that his juvenile history does not involve particularly grave offenses, and that he was only seventeen at the time of the crime.

We are satisfied that Ayers's sentence is not inappropriate. As the trial court observed, Ayers shot his victim repeatedly, both in the chest and back as the victim attempted to flee; he expressed total lack of remorse for his actions; his ongoing contact

[2] Ayers's juvenile record includes adjudications for marijuana and paraphernalia possession, for which he received and violated probation; alcohol consumption; Class B felony robbery, for which he received and violated probation; leaving home without permission; two counts of resisting law enforcement; and not having a valid license. At the time of the instant offense, Ayers had a charge of Class C felony robbery pending against him in adult court.

[3] At the sentencing hearing, Ayers stated, "I don't feel sorry for what happened to the local joker[.]" Tr. p. 648.

7

with the law has left him entirely unreformed; and he placed many persons in danger, including children, for no apparent reason. While Ayers was only seventeen, there is nothing tentative or child-like about his violence. The circumstances of Ayers's crime, and its demonstration of his volatility and lack of moral character, demonstrate that he was properly sentenced to an enhanced forty-eight-year term.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.