**Aaron RODRIGUEZ, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0207–CR–549.

Court of Appeals of Indiana.

April 7, 2003.

---

Jerry T. Drook, Carmel, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Aaron Rodriguez (Rodriguez), appeals the sentence imposed on him by the trial court.

We reverse and remand for resentencing.[1]

*ISSUES*

Rodriguez raises two issues on review, which we restate as follows:

1. Whether the trial court properly evaluated his aggravating and mitigating factors when it imposed an enhanced sentence.

2. Whether the trial court imposed a manifestly unreasonable sentence.[2]

*FACTS AND PROCEDURAL HISTORY*

On September 8, 2001, at approximately 4:30 p.m., Indianapolis Police officers were dispatched to a personal injury accident on East Raymond Street at the I–65 northbound exit ramp involving a teal colored Honda Civic and a brown, full sized Ford truck. Dispatch advised the officers that a person was possibly trapped in one of the vehicles. Officer Sparks, a South District Accident Investigator, arrived on the scene and observed a teal colored Honda Civic on the eastern median of the intersection with severe damage to the driver's side. Then, he saw a brown Ford F–250 pickup truck on the western median of the intersection.

Officer Sparks identified the driver of the Honda Civic as Kristi Broughton (Broughton) and the driver of the Ford truck as Rodriguez. Broughton was extricated from her vehicle by the Indianapolis Fire Department and transported to Wishard Memorial Hospital in extremely critical condition. Officer Sparks attempted to speak to Rodriguez, but was unable to do so due to the fact that Rodriguez spoke little or no English. At this time, a Spanish-speaking officer was requested.

Detective Alan Leinberger (Leinberger) responded to the scene as the Spanish translator. Upon his arrival, Leinberger spoke with Rodriguez. Leinberger observed that Rodriguez's balance was unsteady, his eyes were bloodshot, his manual dexterity was poor, and his speech was slow and slurred. Leinberger also smelled the strong odor of an alcoholic beverage emanating from Rodriguez's breath. At this time, Leinberger advised Rodriguez of

---

1. Oral argument was held in this case on February 6, 2003 at Wabash College in Crawfordsville, Indiana.

2. On July 19, 2002, our supreme court amended Appellate Rule 7(B) effective January 1, 2003. The rule is directed to the reviewing court and sets forth the standard for that review. That review is made as of the date the decision or opinion is handed down. Accordingly, although the sentence here was imposed prior to January 1, 2003, our review has taken place as of this date and the "inappropriate" test is therefore applied.

his Miranda rights, to which Rodriguez stated that he understood. Leinberger then proceeded to ask Rodriguez what happened.

Rodriguez stated that he was driving his employer's truck and was traveling eastbound on East Raymond Street towards the intersection of the I–65 northbound exit ramp. First, he stated that the automatic traffic light was green and then he stated that it was yellow. Rodriguez continued through the intersection and collided with Broughton. He thought that he was only going between thirty and thirty-five miles per hour. Leinberger asked Rodriguez if he consumed any alcoholic beverages on this day of the accident. Rodriguez claimed that he drank two beers at approximately 7:00 a.m. and some water.

Based on this information, Leinberger asked Rodriguez to submit to field sobriety tests and Rodriguez agreed. Leinberger administered the Horizontal Gaze Nystagmus test, the One–Leg–Stand, and the Nine–Step Walk and Turn. Rodriguez failed all three tests. Leinberger informed Rodriguez of the Indiana implied consent law and asked him to submit to a blood draw. Rodriguez agreed to take a blood test.

Leinberger transported Rodriguez to Wishard Memorial Hospital where a registered nurse performed the blood draw. During the testing, Leinberger was informed that Broughton died as a result of the injuries that she sustained from the crash. On September 10, 2001, Leinberger received notification from the Marion County Crime Lab that the analysis Rodriguez's blood indicated that the blood alcohol content was 0.25% weight/volume.

Leinberger also talked to witnesses about the accident. The witnesses report-ed that Rodriguez disregarded the traffic light while going eastbound and collided with Broughton's vehicle.

On September 12, 2001, the State filed an information against Rodriguez charging him with Count I, operating a vehicle while intoxicated causing death, a Class C felony, Ind.Code § 9–30–5–5; Count II, operating a vehicle with .08 or more alcohol in the blood causing death, a Class C felony, I.C. § 9–30–5–5; and Count III, reckless homicide, a Class C felony, I.C. § 35–42–1–5. On May 24, 2002, Rodriguez filed a plea agreement.

On June 14, 2002, a guilty plea hearing was held and Rodriguez pled guilty to Count I, operating a motor vehicle while intoxicated causing death. The plea agreement provided that in exchange for Rodriguez's plea of guilty on Count I, the remaining charges, Counts II and III, would be dismissed. The plea agreement also stated that the State and Rodriguez were free to argue to the trial court for an appropriate sentence. The trial court found that Rodriguez understood his rights and knowingly and voluntarily waived his rights. Therefore, the trial court accepted the guilty plea and the terms of the plea agreement and entered a judgment of conviction on Count I.

Thereafter, the trial court conducted the sentencing hearing. After considering the Pre–Sentence Investigation report and all of the evidence presented, the trial court imposed, in pertinent part, the following sentence:

Let me first extend my condolences to the family. Everyone talked a lot about Kristi Broughton's short life but I think she lived about three lifetimes in that time. .... She was a very giving person I think. Sometimes I think I am

busy with my job and family and balancing all of that but I was very impressed. I think that it is something she would leave for all of you to remember. Not just to make everyday count, I think she was probably a person who made every minute count is what it sounds like. That is an important lesson for everybody to remember as they go forth from here. Part of me, I will just speak honestly and probably more from my heart than from any law book at this point. Part of me feels that I can't impose the "best" sentence because I don't think the legislature has done a very good job with this crime. I think that you are in a unique position, having a pretty powerful, potentially after November even more powerful legislator in your family. I would encourage you to work towards that end to consider that, as a means of providing some meaning to what has happened to you.

I am also confronted though with the difficult situation because I don't know that the law affords me the opportunity to punish Mr. Rodriguez more severely because of the exceptional person that Kristi was. No one had to prove to me today, the value that she brought to all of you, the love, the tenderness, the caring and the significance of her life. None of that is lost on me, believe me and none of your pain is either. I am a wife, I am a mom, I am a sister, I am a daughter, I hope I am a friend to many people and so I feel that pain. Her circle is ever widening[,] I think and probably goes out into the hall. But I am not sure that the prosecution was correct in saying that I could [ ] punish him more because of who she was. The punishment is for the act and the act has enough components of itself for me to consider. So, I say this, in a way I feel largely irrelevant up here. Nothing I do can really make much difference, can it? Except I suppose to give you a sense of value but I am not sure that the law really affords me that opportunity.

I say that for this reason, there are significant mitigators and I will start with those. .... I usually[,] since it is the Defendant who is being sentenced, let them go first and let the victim hear what they have to say to respond. I hope, as much as it must be hard for you in your hearts and minds, I hope you can accept that I accept Mr. Rodriguez's remorse as genuine. Also I think he lives with the knowledge that in a criminal way, albeit not intentionally, but criminally, recklessly, thoughtlessly, selfishly, he killed someone. I think he knows too the value of that person. If it had been someone in his family, there probably wouldn't be a courtroom full of people because they probably don't know as many people, nor are there many people in our community who were like Kristi, that could engender this much response. I do accept his remorse as genuine. I also accept that he has accepted responsibility for what he has done. He does not have a prior criminal history that is known to the Court. He did have prior stable employment as he tried to make his way in our country.

There is however, I think also some significant aggravation. The one fact that screams for higher aggravation is the blood alcohol content level. We aren't dealing with somebody who had one too many. We are dealing with somebody who could well have had ten or twelve too many. I don't know the math. The witnesses were all clear on whose fault the collision was. What we had here was somebody who went out on a binge and decided to drive and took a

very precious life in that process. The time of day is of concern to me. The length of time that the alcohol was consumed. The job that I have is to balance those. While there is significant mitigation, the statutory aggravator about imposition of a reduced sentence, I think is appropriate to consider as the defense has asked for the presumptive or a mitigated sentence.

The Court finds the most significant aggravator is the blood alcohol content. I think there is an appropriate, probably the most significant justice or the most significant factor that I can look at in the evaluation of justice in the case is to consider that while Mr. Rodriguez's family will suffer for four years, he will be returned to them at the end of that time. To be fair, that is nothing compared to what Ms. Broughton's family has to endure. I struggled as I sat here. My mind has gone different places in terms of the appropriate sentence in this case. I think based upon the level of alcohol in his blood, the amount of alcohol he had to consume, and the significant permanent loss to Ms. Broughton's family, coupled with the basically statutorily comparatively little loss that his family will suffer. The Court does find that in this case based on those facts, that the aggravated sentence of eight years is appropriate. It will be served at the Department of Corrections [sic].

(Transcript pp. 100–04). In addition to sentencing Rodriguez, the trial court waived fees and costs and suspended Rodriguez's drivers license for five years. The trial court also dismissed Counts II and III, pursuant to the plea agreement.

Rodriguez now appeals.

## DISCUSSION AND DECISION

### I. *Standard of Review*

We begin our review of Rodriguez's sentence by determining what standard of review we are to use in assessing the appropriateness of his sentence. Importantly, our scope of review changed on January 1, 2003, and now permits us to revise a sentence if that sentence "is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). This change in the scope of our review makes a thorough examination of the procedures we are to employ in reviewing and revising sentences appropriate.

### A. Indiana Constitution

In 1966, the *Report of the Judicial Study Commission* was released. It found that our state's judiciary would benefit by allowing appellate courts to revise sentences, as the Court of Criminal Appeals in England is allowed to do. *Report of the Judicial Study Commission,* Comment at 140 (1966). When appellate courts have the power of sentence revision, more uniformity in sentencing results. J. Eric Smithburn, *Sentencing in Indiana: Appellate Review of the Trial Court's Discretion,* 12 Val.U.L.Rev. 219, 223 (1978). This uniformity has the dual virtues of providing appropriate rehabilitation to the offender without overtaxing the corrections system. *Id.* The Committee's recommendations were taken up by the General Assembly, and the voters of our state amended our Constitution on November 3, 1970. Therefore, Article VII, Section 6 of our constitution now grants us the authority to "review and revision of sentences for defendants in all criminal cases" pursuant to rules specified by our supreme court.

### B. Sentencing Statute

In the wake of the *Report of the Judicial Study Commission* in 1966, appellate review of sentences was not the only change in the penal system. In 1976, our General Assembly abolished jury sentenc-

ing by declaring that "the court shall fix the penalty of and sentence a person convicted of an offense." Ind.Code § 35–50–1–1 (1978); *Debose v. State,* 270 Ind. 675, 676, 389 N.E.2d 272, 273 (1979). These weighty changes to the Penal Code became effective on October 1, 1977. *Debose,* 270 Ind. at 676, 389 N.E.2d at 273. The Penal Code also "provided specific directives which the trial court must consider in determining a proper sentence to impose for any crime." Smithburn, *supra,* at 221. That statute read as follows:

> In determining what sentence to impose for a crime, the court shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person.

I.C. § 35–4.1–4–7 (1978).[3]

This standard set of factors was designed to bring uniformity to sentencing. Put another way, "similar conduct of similar offenders should be accorded similar treatment." *U.S. v. Williams,* 891 F.2d 962, 967 (1st Cir.). Uniformity in sentencing was and is viewed as beneficial in avoiding "disrespect for the judicial process and potentially for the law itself." Smithburn, *supra,* at 221. At least one commentator has declared that treating similar offenders the same "serves to deter unlawful conduct by publicizing the sentences that will be imposed for certain crimes." Cynthia Lee, *The Sentencing Court's Discretion to Depart Downward,* 23 Ind.L.Rev. 681, 687 (1990).

The statute has seen numerous revisions. For instance, it was amended in 1984 to require that trial courts take into account whether the victim of the offense

was at least sixty-five years of age. *See* I.C. § 35–38–1–7 (1984). The statute was again changed in 1985 to compel courts to consider an oral or written statement made by the offender's victim. *See* I.C. § 35–38–1–7 (1985). In 1987, the statute was expanded to require that trial courts consider whether the victim was younger than twelve years of age. *See* I.C. § 35–38–1–7 (1987). In 1989, a section requiring the trial court to reflect on whether the defendant had violated a protective order during the commission of his offense was added. *See* I.C. § 35–38–1–7 (1989). Finally, in 2002, a section was added that required trial courts to consider whether the crime was committed in the presence or within the hearing of a person under the age of eighteen. *See* I.C. § 35–38–1–7.1.

It is also apparent that, while the General Assembly added specific considerations that trial courts had to make in determining a sentence, the nature and circumstances of the offense and the character of the offender were always the primary considerations. For example, the first amendment made to the statute in 1984 required that courts take into account the age of the victim if the victim was at least sixty-five years of age. This is simply a circumstance of the offense, albeit stated more specifically. By requiring that courts take into account this particular "circumstance," the General Assembly was indicating its belief that crimes in which the "circumstances" included a senior citizen victim are more deserving of scrutiny.

The provision passed in 1989 compelling the trial court to consider whether the defendant committed the crime while under the restriction of a protective order is especially enlightening. One could argue

**3.** This section was amended and recodified as Indiana Code section 35–38–1–7.1 in 2002.

that the existence of a protective order is a "circumstance" of the offense, but a case could also be made that it impacts the "character of the offender" as well. An offender who flouts a protective order shows a willing disregard for our state's court system. Similar arguments can be made for the other requirements of I.C. § 35–38–1–7.1. In short, the conditions added to the statute over the years simply amplify its two key considerations: the nature of the offense and character of the offender.

### C. Court Rule

After Indiana's citizens granted us the authority to revise sentences, our supreme court adopted a rule defining the scope of our review. Former Ind. Appellate Rule 2—effective January 1, 1978—stated that we were not to "revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." *See* Ind. Appellate Review of Sentences Rule 2 (1980).

According to Professor Smithburn, the genesis of Indiana's appellate review rule was the *American Bar Association Standards for Sentencing Alternatives and Procedures,* which noted that the key factors in determining an appropriate sentence were "the gravity of the offense, the character of the offender and the need for protection of the public." Smithburn, *supra,* at 245. Thus, it seems that our supreme court and General Assembly were writing on the same page, keeping the nature and circumstances of the offense and the character of the offender as the focus in sentencing decisions.

The view that our General Assembly and supreme court were of one mind is confirmed by our supreme court's sentence revision decisions that followed the enactment of App. R. 2. In *McNew v. State,* a defendant who was convicted for robbery as a class A felony received a sentence of forty years. 271 Ind. 214, 215, 391 N.E.2d 607, 609 (1979). The trial court added ten years to the presumptive thirty-year sentence because of McNew's prior criminal activity and "the seriousness of the crime," which involved McNew's shooting a bystander during the robbery. *Id.* McNew argued that the trial court's sentence was manifestly unreasonable. Our supreme court used the factors listed in I.C. § 35–4.1–4–7 when reviewing McNew's sentence and noted that the legislature "intended that the nature and circumstances of the crime committed" be considered when sentencing a defendant. *Id.* at 220, 391 N.E.2d at 612. Likewise, prior criminal activity was to be considered. *Id.* Our supreme court acknowledged that inasmuch as the trial court used a charge on which McNew had been acquitted as "prior criminal activity" to arrive at McNew's sentence, this was error, as an acquittal is—by definition—a finding of no criminal activity. *Id.* Nevertheless, the *McNew* court held that "we cannot say that the sentence is 'manifestly unreasonable in light of the nature of the offense and the character of the offender'" because the trial court used another of the legislature's prescribed aggravating or mitigating factors: the nature and circumstances of the crime itself. *Id.*

Thus, from the beginning of our constitutional authority to revise sentences, appellate courts, when exercising their constitutional responsibility to review sentences have focused and must continue to focus on the statutorily required aggravators and mitigators, as these are merely amplifications of our appellate rule calling for appraisal of sentences

based on "the nature and circumstances of the offense and character of the offender." App. R. 7(B). By doing so, Indiana can continue to advance "... in the direction of consistency in sentencing." Joel M. Schumm, *Recent Developments in Indiana Criminal Law and Procedure*, 35 Ind. L.Rev. 1347, 1368 (2002).

## II. *Imposition of an Enhanced Sentence*

Rodriguez argues that he was improperly sentenced. Specifically, Rodriguez contends that the trial court improperly used aggravating factors to enhance his sentence. Additionally, Rodriguez maintains that the trial court erred when it failed to recognize all of the proffered mitigating factors when imposing his enhanced sentence.

### A. Aggravating Circumstances

Rodriguez argues that the trial court improperly relied on aggravating factors to enhance his sentence. Specifically, Rodriguez claims that the trial court improperly relied on the following as aggravating circumstances: the impact of the crime on the victim's family, the circumstance that imposing a reduced sentence would depreciate the seriousness of the crime, and his blood alcohol content level (*i.e.* the use of an element of the offense, Rodriguez's intoxication, as an aggravator).

#### 1. *The Impact on the Victim's Family*

■ Rodriguez argues that the trial court improperly considered the impact of the death of Broughton on her family as an aggravator. In its sentencing statement, the trial court described the impact on the

victim's family as a "significant permanent loss." (Tr. p. 104). The State concedes that the trial court's reliance upon this factor may have been improper in this case. We agree.

■ Under normal circumstances, the impact upon a victim's family is not a proper aggravating circumstance for purposes of sentencing. *See Bacher v. State*, 686 N.E.2d 791, 801 (Ind.1997). In *Bacher*, our supreme court explained that because the impact on family members accompanies almost every case dealing with the death of a victim, it is not appropriate to consider that impact as an aggravating factor unless that impact was of such a destructive nature not normally associated with the commission of the offense in question and the impact was foreseeable to the defendant. *Id.* Here, Rodriguez was charged with operating a vehicle while intoxicated causing death death being an essential element of the offense. Therefore, it is not appropriate to consider the impact of the victim's death on her family, because death is normally associated with the commission of the offense in question; although its impact was not necessarily foreseeable to the defendant. *See id.* Accordingly, we find that the trial court improperly used the impact on the victim's family as an aggravating circumstance.[4]

#### 2. *Imposition of a Reduced Sentence Depreciates the Seriousness of the Crime*

■ Next, Rodriguez argues that the trial court improperly relied upon the fact that the imposition of a reduced sentence

---

4. However, it appears that the trial court enhanced Rodriguez's sentence to the maximum of eight years in an attempt to acknowledge the significant impact of the death of the victim on her family and friends. We believe that this is an issue that our legislature should address. I.C. § 9–30–5–5(a)(3) states, "a person who causes the death of another person when operating a motor vehicle while intoxicated commits a Class C felony."

would have depreciated the seriousness of the crime as an aggravating factor. Specifically, Rodriguez asserts that there is nothing in the sentencing statement indicating that the trial court considered imposing less than the presumptive sentence and therefore, reliance on this aggravating circumstance was improper. The State concedes that this aggravator was improper because this aggravating circumstance is only available when the trial court is considering whether to impose a sentence lower than the presumptive sentence. *Price v. State,* 725 N.E.2d 82, 85 (Ind. 2000). Accordingly, we find that the trial court improperly used the fact that the imposition of a reduced sentence would reduce the seriousness of the crime as an aggravating circumstance. *See id.*

### 3. *Intoxication*

Rodriguez further argues that the trial court improperly used an element of the offense for which he was charged as an aggravator. Specifically, he claims that the trial court improperly used his intoxication as an aggravating circumstance when it stated that Rodriguez's level of intoxication "scream[ed] for high aggravation." Tr. p. 103.

██ Our supreme court has determined that a fact, which is a material element of a crime, may not also constitute an aggravating circumstance to support an enhanced sentence. *Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind.1996); *Stewart v. State,* 531 N.E.2d 1146, 1150 (Ind.1988). However, particularized circumstances of a criminal act may constitute separate aggravating circumstances. *Morgan,* 675 N.E.2d at 1073.

██ Here, the offense to which Rodriguez pled contained the element of intoxi-

cation. However, the circumstances here show that Rodriguez's blood alcohol content was nearly three times the legal limit when he was tested shortly after the accident. Moreover, the incident occurred at a congested area during rush hour traffic. Under these facts and circumstances, we conclude that the trial court could properly consider Rodriguez's clear abuse of alcohol and the time of day of Rodriguez's conduct together as a separate and proper aggravating circumstance. Thus, there was no error with respect to this issue.

### B. Mitigating Circumstance

██ Rodriguez also claims that the trial court failed to take into account a significant mitigating circumstance. Specifically, Rodriguez maintains that the trial court failed to consider the hardship imposed on his dependents by his incarceration.

Here, the trial court's oral sentencing statement indicated, "while Mr. Rodriguez's family will suffer for four years, he will be returned home to them at the end of that time. To be fair, that is nothing compared to what Ms. Broughton's family has to endure." (Tr. p. 103–4). Nonetheless, it does not appear the trial court considered the hardship imposed on his dependents by his incarceration as a significant mitigating circumstance.

██ The trial court is not required to find mitigating factors or to accept as mitigating the circumstances proffered by the defendant. *Powell,* 751 N.E.2d at 317. Specifically, the trial court is not required to find that a defendant's incarceration would result in undue hardship upon his dependents. *See Allen v. State,* 743 N.E.2d 1222, 1237 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* Only when the trial court fails to find a significant mitigator

that is clearly supported by the record is there a reasonable belief that it was overlooked. *Kien v. State,* 782 N.E.2d 398, 415 (Ind.Ct.App.2003).

In this case, the trial court did not mention in its oral sentencing statement the hardship on Rodriguez's dependents due to his incarceration as a significant mitigating circumstance. However, the record indicates that Rodriguez's wife was working and that their children have lived with Rodriguez's mother and two brothers in Mexico since 1999. Therefore, we find that trial court properly declined to attach any significant weight to this proffered mitigating circumstance. *See Powell,* 751 N.E.2d at 317; *See also, Allen,* 743 N.E.2d at 1237.

### III. *Inappropriate Sentence*

 As discussed *infra,* this court will not revise a sentence authorized by statute, unless it is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *Kien,* 782 N.E.2d at 416. When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive sentence. *Hildebrandt v. State,* 770 N.E.2d 355, 361 (Ind.Ct.App.2002), *trans. denied.* Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors which must be considered pursuant to I.C. § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Hildebrandt,* 770 N.E.2d at 361.

 The presumptive sentence is meant to be the starting point for the trial court's consideration of the sentence that is appropriate for the crime committed. *See Lander v. State,* 762 N.E.2d 1208,

1214–15 (Ind.2002). In the present case, Rodriguez pled guilty to the charge of operating a vehicle while intoxicated causing death, a Class C felony. The nature of the offense specifically takes into account that a death occurred as a result of driving while intoxicated. *See* I.C. § 9–30–5–5(a)(3). The presumptive sentence for a Class C felony is four years, with not more than four years added for aggravating circumstances, and not more than two years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–6.

As set forth above, the trial court erred in considering two of the three aggravating factors it relied upon to enhance Rodriguez's sentence. Additionally, four valid and significant mitigating circumstances were found in considering the sentence that should be imposed. As a result, and with the acknowledgement that this was an extraordinarily difficult sentencing for the trial court, and hardly less so for this court, we conclude that the trial court did not and could not appropriately weigh the aggravating and mitigating circumstances to determine that the aggravators outweighed the mitigators so as to warrant the maximum eight-year sentence.

The trial court properly identified several significant mitigating circumstances in its oral sentencing statement. The significant mitigating circumstances were as follows: 1) Rodriguez did not have a prior criminal record; 2) he was remorseful for what he did; 3) he took responsibility for his actions by pleading guilty; and 4) he possessed prior stable employment.

Furthermore, it is important to note that Rodriguez entered into a plea agreement with the State. Under the terms of the plea agreement, Rodriguez agreed to plead guilty to operating a vehicle while intoxicated causing death, a Class C felo-

ny, in exchange for the dismissal of Count II, operating a vehicle with .08 or more alcohol causing death, a Class C felony, and Count III, reckless homicide, a Class C felony. Plea agreements are a well-established part of our system of justice. The best interests of law enforcement, through the prosecuting attorney, and of the individual defendant involved are represented by plea agreements. Plea agreements are subject to review and approval by the judiciary. *See* I.C. § 35–35–3–3. Here, we acknowledge that the trial court accepted Rodriguez's guilty plea for operating a vehicle while intoxicated causing death as a Class C felony.

Additionally, we find that Rodriguez's character does not merit the maximum allowable sentence of eight years. Our supreme court has determined that "the maximum possible sentences are generally most appropriate for the worst offenders." *Buchanan v. State,* 767 N.E.2d 967, 973 (Ind.2002). Here, Rodriguez was not "the very worst offender" because of his lack of criminal history. The Indiana General Assembly has determined that a defendant's prior or lack of criminal history is so significant that trial courts "shall" consider it when determining what sentence to impose. *See* I.C. § 35–38–1–7.1(a); *Hildebrandt,* 770 N.E.2d at 361. Indiana Code § 35–38–1–7.1 appropriately encourages leniency towards defendants who have not previously been through the criminal justice system. *Biehl v. State,* 738 N.E.2d 337, 339 (Ind.Ct.App.2000), *trans. denied.* The other three valid and significant mitigating circumstances also support a reduction in Rodriguez's sentence. Rodriguez showed genuine remorse for his actions and he accepted responsibility for his actions. Rodriguez was also gainfully employed before the accident.

Starting at the presumptive sentence of four years, and after weighing the single proper aggravator and four significant mitigators, we find the trial court's sentence of eight years inappropriate. Accordingly, we reduce Rodriguez's sentence to three and one-half years.

## CONCLUSION

Based on the foregoing, we conclude that the trial court improperly evaluated Rodriguez's aggravating and mitigating circumstances and, therefore, the sentence was inappropriate. Accordingly, we reduce Rodriguez's sentence at the Indiana Department of Correction to three and one-half years.

BAKER and MATHIAS, JJ., concur.