**John LOYD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0210–CR–859.**

Court of Appeals of Indiana.

May 8, 2003.

954 

David Becsey, Zeigler Cohen & Koch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, John R. Loyd (Loyd), appeals his conviction for failure of driver to fulfill duties following an accident involving death, a Class C felony, Ind.Code § 9–26–1–1.

We affirm.

### ISSUES

Loyd raises two issues on appeal, which we restate as follows:

1. Whether the State presented sufficient evidence to support his conviction; and

2. Whether the trial court properly sentenced him.

### FACTS AND PROCEDURAL HISTORY

On Friday, December 31, 1999, Marion County Sheriff's Department Deputies were dispatched to 4300 N. Michigan Road Indianapolis, Indiana, on a report of a body found by the side of the road that appeared to be struck by a vehicle. Upon arrival, the officers talked with Victor Perkins (Perkins) and George Crawford (Crawford) who were contacted by Barbara Bridges (Barbara) because she was concerned that her husband, Theodore Bridges (Bridges), had not returned home from his morning jog. Perkins told the officers that he and Crawford were retracing Bridges' normal running route in an attempt to locate him. Perkins stated that they found Bridges' body along the embankment on the eastside of the roadway, 4300 North Michigan Road, and then they called the Marion County Sheriff's Department.

The body was positively identified as Bridges. Photos and measurements were taken of the scene, and car parts were recovered. The body was transported to the county morgue where an autopsy was conducted. The cause of death was listed as blunt force injuries to the head, chest and lower extremities caused by a vehicle. In addition to the victim's clothing, paint chips were recovered from a wound on the victim's leg.

On October 4, 2000, the Marion County Sheriff's Department received a crime stopper's tip. Specifically, the informant stated, "the person who struck the jogger on North Michigan Road approximately one year ago lives with his parents at 1805 W. Kessler Boulevard West Drive (W. Kessler Blvd.) and his name is John Loyd." (Appellant's App. p. 19). The informant further stated that the car Loyd was driving, a 1983 Buick Skylark, was parked behind the home at 1805 W. Kessler Blvd. covered with a tarp. The vehi-

cle was still in a wrecked condition. The informant also stated that Loyd borrowed the car from someone, but never gave it back because it was wrecked.[1] The informant further noted that Loyd thought he hit a person, but does not remember.

A utility check with Indianapolis Power and Light confirmed the name on the residence of Frank E. Loyd. On Monday, December 11, 2000, Detective Jane Kistler went to 1804 Kesslerwood Lane and received permission from the homeowner to walk through his back yard in order to see the rear of 1805 W. Kessler Blvd., the Loyd residence. Detective Kistler was able to confirm that a vehicle was under a tarp in the carport behind this residence.

As a result, the police went to the Loyd residence to recover the vehicle. After receiving permission from Frank Loyd, the police photographed the vehicle. Upon removal of the tarp, the vehicle was found to have damage to the right front, the windshield and the right rear. The vehicle was impounded and taken for testing. The laboratory examination report from the forensic scientist showed that paint chips taken from Bridges and the impounded vehicle exhibited the same microscopic and physical characteristics. The parts that were recovered at the scene of the accident also matched the vehicle.

On March 8, 2001, the State filed an information against Loyd charging him with failure of driver to fulfill duties following an accident involving death, a Class C felony. The information, in pertinent part, stated:

> John R. Loyd, on or about December 31, 1999, being the driver of a 1983 Buick automobile which was involved in an accident resulting in the death of Theodore Bridges, did fail to immediately stop the vehicle at the scene of the accident, which was at approximately 4300 N. Michigan Road or as close to the accident as possible, and did fail to immediately return to and remain at the scene until he had fulfilled the requirements of I.C. § 9–26–1–1.

(Appellant's App. p. 23). On June 7, 2002, a bench trial was held. The trial court found Loyd guilty as charged.

On July 12, 2002, a sentencing hearing was held. After hearing argument and reviewing the evidence, the trial court sentenced Loyd to the Indiana Department of Correction for a period of eight years. In support of the enhanced sentence, the trial court articulated the following statement:

> Okay. Now before announcing sentence I know we have a number of friends and family members out there of both Mr. Bridges and of Mr. Loyd. I want to advise everyone at this point that no outbursts will be tolerated. I've reviewed the statutorily required considerations in imposing sentence as required under Indiana Code 35–38–1–7.1 specifically. In determining what sentence is appropriate for a crime I considered, as required, the risk the person will commit another crime, the nature and circumstances of the crime committed, the person—Mr. Loyd's criminal record, character, and condition. Find that the following aggravating circumstances do exist, that the defendant Mr. Loyd has a history of criminal activity. He's demonstrated a pattern of alcohol related traffic offenses. Prior to his commission of this offense he had at least one docu-

---

1. The 1983 Buick Skylark was owned by Holly Brune (Brune). Brune signed a waiver of rights and agreed to give a statement. She stated that she has known Loyd for approximately fifteen years and that they were in an off-on relationship for approximately eight years. Brune loaned the Buick Skylark to Loyd In November 1999 to use after his car had been repossessed. Loyd called her before school Christmas break ended and told her that the vehicle was wrecked.

mented operating while intoxicated conviction probably two, although the record cannot be found. The Court also notes that the day after he committed this offense he was arrested again for operating while intoxicated and that resulted in a conviction again—his third—his second documented conviction, most probably his third. Mr. Loyd is also, as aggravator number two, in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility. There have been prior attempts at [e]ffectuating his rehabilitation through probation and through periods of incarceration both of which were unsuccessful because Mr. Loyd continued to re[-]offend after that. Aggravator number three, that imposition of a reduced sentence or suspension of the sentence and the imposition of probation would result in reducing the seriousness of the crime. Mr. Bridges dies as a result of what you did, sir. I find there are no mitigating circumstances. In weighing these factors I find that the aggravating circumstances outweigh mitigating circumstances and I am going to sentence you to the maximum that I can sentence you under the law for this offense of which you were charged—with which you were charged and of which you were convicted and that is eight years. Your attorney Mr. Dean has represented zealously at trial and also here at the sentencing hearing trying to give me some alternatives to sending you to prison for that time or for all of that time. I find that other placements, given the aggravators I have outlined, are not appropriate. Sir you will be sentenced to serve all eight years at the Indiana Department of Correction[ ]. You will be given 50 days credit time for time actually served as of today's date.

(Tr. pp. 231–33).

Loyd now appeals.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

▮▮▮ Our standard of review for sufficiency claims is well settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or assess the credibility of witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct. App.2002). We consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences that can be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App. 2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Cox*, 774 N.E.2d at 1028–29. A verdict may be sustained based on circumstantial evidence alone if the circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind.2000).

In the instant case, Loyd contends that the State failed to present sufficient evidence to support his conviction. Specifically, Loyd maintains that there was no direct evidence identifying Loyd as the operator of the vehicle when Bridges was struck.

To convict Loyd for failure to fulfill his duties as a driver following an accident involving death, a Class C felony, the State was required to prove beyond a reasonable doubt that Loyd failed to immediately stop the vehicle at or as close to the accident scene involving death as possible. *See* I.C. § 9–26–1–1. Moreover, the State was required to show that Loyd failed to remain at the scene to provide his name, license, and registration; to determine if injured persons needed assistance; and to provide a report of the accident to the police. *See id.*

▮▮▮ Here, the State presented sufficient evidence to support Loyd's conviction

for failure to fulfill duties as a driver following an accident causing death, a Class C felony. Circumstantial evidence alone may sustain a verdict if the circumstantial evidence supports a reasonable inference of guilt. *See Maul*, 731 N.E.2d at 439. As stated above, an anonymous informant reported that Loyd was the driver who struck Bridges on North Michigan Road and that the car was covered with a tarp and located behind the home at 1805 W. Kessler Blvd. Detective Kistler confirmed the tipster's information by going to the reported location and observing that the front end of the car was damaged around the headlight assembly and the window was caved in. Subsequently, the Buick Skylark was recovered and taken for testing. The record indicates that the laboratory examination report showed that paint chips taken from Bridges and the impounded vehicle exhibited the same microscopic and physical characteristics. Additionally, the parts recovered at the scene of the accident were also matched to the car.

Moreover, the record reflects that Detective Kistler interviewed Loyd after he signed a waiver of rights on December 14, 2000. Detective Kistler testified that Loyd said that he obtained the car from Brune and that he was driving the car to and from work. According to Detective Kistler, Loyd further stated in the interview that on the night in question he worked an event at Conseco Fieldhouse and on his way home stopped at a bar at 30th Street and Martin Luther King Drive until it closed. His route home included driving on Michigan Road north of 28th Street to Kessler at the 5600 block. This route included the accident scene of 4300 Michigan Road. Loyd also told Detective Kistler that he was drunk by the time he was driving home. Specifically, he said that he was "pretty well in the bag" and all he remembered was the darkness and then suddenly cold air and glass hitting him in the face. (Tr. p. 97).

Additionally, the record contains testimony from Brune. Specifically, Brune testified that on January 2, 2000 or January 3, 2000, she called Loyd. Loyd said that "something bad happened" and that her car was totaled. (Tr. p. 53). Brune testified that Loyd did not want to talk about the fact that the car was wrecked. She testified that Loyd told her that he drove around the neighborhood with his father because he thought he hit a mailbox. He also told her that they found a mailbox down. When Brune questioned Loyd further about the crash, he told her that while he was driving he felt a rush of cold air hitting him in the face.

Furthermore, the record contains testimony from Loyd's parents, Frank and Shirley Loyd. Specifically, Frank testified that on Friday, December 31, 1999, Loyd was driving his car, a 1983 Cadillac. Frank also testified that the damage to Brune's Buick Skylark occurred before New Year's Eve because he noticed that the car was damaged on Wednesday morning, December 29, 1999, while he was collecting his garbage cans. Shirley also testified that she noticed that Brune's car was damaged on the Wednesday before New Year's Eve.

■ However, it is the trier of fact's prerogative to weigh the credibility of the witnesses and to weigh the evidence. *See Stephenson v. State*, 742 N.E.2d 463, 499 (Ind.2001). Because there is substantial evidence of probative value supporting Loyd's conviction, we will not reverse the conclusion of the trier of fact. *Cox*, 774 N.E.2d at 1028–29. Therefore, we find that the State presented sufficient evidence to support Loyd's conviction for failure of driver to fulfill duties following an accident causing death.

## II. *Imposition of an Enhanced Sentence*

Loyd also argues that the trial court improperly sentenced him. Specifically, Loyd asserts that the trial court erred when it enhanced his sentence to the maximum sentence of eight years.

Sentencing decisions are within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion. *Powell v. State*, 751 N.E.2d 311, 314 (Ind.Ct.App.2001). The trial court's sentencing discretion includes the determination of whether to increase presumptive penalties. *Madden v. State*, 697 N.E.2d 964, 967 (Ind.Ct.App.1998), *trans. denied.* In doing so, the trial court determines which aggravating and mitigating circumstances to consider, and is solely responsible for determining the weight to accord each of these factors. *Perry v. State*, 751 N.E.2d 306, 309 (Ind.Ct.App. 2001). The sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating and mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine that the aggravators outweigh the mitigators. *Powell*, 751 N.E.2d at 315. We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *Id.* A sentence enhancement will be affirmed if, after due consideration of the trial court's decision, this court finds that the sentence was appropriate in light of the nature of the offense and the character of the offender. *Rodriguez v. State*, 785 N.E.2d 1169, 1174 (Ind.Ct.App.2003).

A single aggravating circumstance may be sufficient to enhance a sentence. *Kien v. State*, 782 N.E.2d 398, 411 (Ind.Ct.App.2003). Moreover, the trial court is not required to find mitigating factors or to accept as mitigating the circumstances proffered by the defendant. *Powell v. State*, 751 N.E.2d 311, 317 (Ind. Ct.App.2001).

In the present case, Loyd was sentenced to eight years for failure of driver to fulfill the duties following an accident causing death, a Class C felony. The presumptive sentence for a Class C felony is four years, with not more than four years added for aggravating circumstances, and not more than two years subtracted for mitigating circumstances. *See* I.C. § 35-50-2-6. Thus, the trial court sentenced Loyd to the maximum sentence of eight years for his conviction for failure of driver to fulfill duties following an accident involving death, a Class C felony.

Loyd maintains that the trial court improperly relied on his history of criminal activity. Loyd claims that the trial court erred in making assumptions that were not sufficiently proven. Specifically, Loyd asserts that the trial court assumed that he was convicted of "two prior alcohol driving related convictions." (Appellant's Br. p. 7). However, we find that the trial court properly enhanced Loyd's sentence based on his criminal history. A defendant's prior criminal history alone can support an enhanced sentence. *Buchanan v. State*, 699 N.E.2d 655, 657 (Ind.1998). As shown above, the trial court noted in its sentencing statement that Loyd had two previous convictions for operating a vehicle while intoxicated. The trial court did not base its finding of Loyd's prior convictions on unproven assumptions, rather the trial court relied on the pre-sentence investigation report. It is true that the trial court mentioned the possibility of a third conviction, but there was no record of this conviction. Accordingly, it is our determination that the trial court properly applied Loyd's criminal history as an aggravator. *See* I.C. § 35–38–

1–7.1(a)(3)(A); *Jones v. State*, 675 N.E.2d 1084, 1087 (Ind.1996) (trial court supported criminal history aggravator by specifically identifying several past incidents of defendant's criminal conduct).

■ Next, Loyd argues that the trial court improperly considered that he was in need of correctional or rehabilitative treatment that could best be provided by commitment of the person to a penal facility as an aggravating circumstance. When this aggravator is cited, the trial court should explain why the defendant needed correctional or rehabilitative treatment in a penal facility for longer than the presumptive term. *Walter v. State*, 727 N.E.2d 443, 447 (Ind.2000); I.C. § 35–38–1–7.1(b)(3). This requirement is met if the trial court's reasoning for enhancing the sentence is clear from a review of the sentencing transcript. *Angle v. State*, 698 N.E.2d 356, 361 (Ind.Ct.App.1998). In the instant case, the trial court specifically stated that Loyd's previous attempts at rehabilitation through incarceration and probation were unsuccessful because he continued to re-offend after these attempts. Therefore, we find that the trial court properly considered Loyd's need for correctional or rehabilitative treatment would best be provided by commitment to a penal facility as an aggravating circumstance.

■ Loyd further contends that the trial court improperly relied upon the fact that the imposition of a reduced sentence would have depreciated the seriousness of the crime as an aggravating factor. Specifically, Loyd asserts that there is nothing in the sentencing statement indicating that the trial court considered imposing less than the presumptive sentence and, therefore, reliance on this aggravating circumstance was improper. This aggravating circumstance is "only to be used when the trial court considers imposing a sentence less than the presumptive." *Powell v.*

*State*, 751 N.E.2d 311, 317 (Ind.Ct.App. 2001).

■ Here, the record reflects that the trial court considered imposing less than the presumptive sentence. Specifically, the record indicates that Loyd suggested that the trial court split his sentence due to his remorse. The record also shows that the trial court acknowledged this suggestion as well as suggested alternatives to incarceration, *i.e.* probation and/or mandatory treatment program, but determined that in light of the aggravators the alternatives to incarceration were not appropriate. Thus, we find that the trial court considered a reduced sentence but properly chose not to impose a reduced sentence because it was inappropriate under the circumstances. *See id.*

■ Further, Loyd asserts that the trial court improperly considered the nature and circumstance of the crime committed as an aggravator. Specifically, he claims that the trial court improperly used Bridges' death as an aggravating circumstance. A fact, which is a material element of a crime, may not also constitute an aggravating circumstance to support an enhanced sentence. *See Rodriguez*, 785 N.E.2d at 1178. However, particularized circumstances of a criminal act may constitute separate aggravating circumstances. *Id.*

■ Here, the trial court cited no specific facts or circumstances, which set Loyd's crime apart from that which is generally associated with the failure of driver to fulfill duties following an accident involving death. *Powell*, 751 N.E.2d at 317. The very nature of the offense involves death and that offense has been determined by our legislature to be a Class C felony with a presumptive sentence of four years. Clearly, the trial court cannot enhance Loyd's sentence by

the same elements that form the basis of his conviction. *See Rodriguez,* 785 N.E.2d at 1178. Therefore, we find that the trial court improperly considered the nature and circumstance of the crime committed as an aggravator.

■ As stated above, a single aggravating circumstance may be sufficient to enhance a sentence. *Kien,* 782 N.E.2d at 411. Here, the trial court properly identified Loyd's criminal history, his need for correctional or rehabilitative treatment, and the fact that the imposition of a reduced sentence would have depreciated the seriousness of the crime as aggravating circumstances. Any one of these valid aggravating circumstances was sufficient to support the trial court's imposition of the enhanced sentence. *See id.*

■ Moreover, a sentence that is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *Kien,* 782 N.E.2d at 416. When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive sentence. *Rodriguez,* 785 N.E.2d at 1179. Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors, which must be considered pursuant to I.C. § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Id.*

In this case, the nature of the offense and the character of Loyd clearly support an enhanced sentence. Initially, the trial court focused upon the presumptive sentence. Then, the trial court deviated from the presumptive sentence based upon the proper identification of three aggravating factors. Therefore, the trial court properly enhanced Loyd's sentence for failure of driver to fulfill duties following an accident causing death as a Class C felony from the presumptive sentence of four years to the maximum sentence of eight years. Consequently, we find that the trial court properly sentenced Loyd. *See id.;* App. R. 7(B).

*CONCLUSION*

Based on the foregoing, we conclude that Loyd was properly convicted of and sentenced for failure of driver to fulfill duties following an accident involving death, a Class C felony.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.