## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 24 2018, 5:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Riddle,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 24, 2018<br><br>Court of Appeals Case No.<br>39A04-1712-CR-2975<br><br>Appeal from the Jefferson Superior Court<br><br>The Honorable Michael Hensley, Judge<br><br>Trial Court Cause No.<br>39D01-1705-F6-395 |

**Altice, Judge**

## Case Summary

Following a jury trial, Jason Riddle was convicted of Level 6 felony performing sexual conduct in the presence of a minor. The sole issue he raises on appeal is whether the State presented sufficient evidence to support his conviction.

We affirm.

## Facts & Procedural History

In the early evening of April 25, 2017, Denise Chatham was seated on the front porch of her home located on Walnut Street in Madison, Indiana. Walnut Street runs roughly north to south and is a two-lane street with room for street parking on both sides. Chatham's home was located at the entrance to an alley that ran perpendicular to Walnut Street. Chatham's boyfriend, Russell Smith, and her two older sons, Tyler and Jacob, were inside the home.

Across the street, Renee Hughes also sat on her porch, drinking a cup of coffee and watching her children play with neighborhood children on the sidewalk. The children, seven in all ranging in age from third grade to middle school, were running, riding bicycles, and playing four square.

Both Chatham and Hughes saw a man, later identified as Riddle, walking north on the sidewalk wearing blue jeans and a blue shirt over a white T-shirt. As Riddle neared, Hughes instructed the children to make room on the sidewalk for Riddle to pass. Riddle walked past the children and then crossed the street to the alley that runs along the side of Chatham's house. Riddle did not make

eye contact with Chatham as he passed her porch. Chatham recalled, "He had a strange look on his face. And I'm thinking – I thought to myself, something's not right with him." *Transcript Vol. 2* at 21.

[6] After Riddle passed, Chatham walked to the end of her porch and looked down the alley. Riddle had stopped in the alley about "15 to 20 feet" away and was "massaging his male membrane [sic] . . . going back and forth with both of his fingers . . . [of] both hands." *Id.* at 22. Chatham returned inside her home and told Russell, "there's a weirdo in the alley doing something weird." *Id*. at 110. Chatham went to the kitchen of the home, which had a window facing the alley, and looked through the blinds. Riddle was still standing in the same place, making the same movement. Both Russell and Jacob also looked through the window. Jacob testified that Riddle was facing their house and had positioned his shirt in front of his groin and was "kind of hunched over, and his hand was up underneath his shirt." *Id.* at 192. Russell used his phone to take pictures through the slats in the blinds and testified that, "right as I'm taking [the second of two pictures], [Riddle] sees either the flash, or my blue case on my phone," and began walking back in the direction of Hughes's house. *Id*. at 120-21.

[7] Chatham called 911 and returned to her porch, soon to be joined by Russell. Riddle emerged from the alley and ran north up the street. Chatham yelled to Hughes, "you would not believe what that guy was doing out here in this alley." *Id*. at 29. Hughes "flipped out, and took off running." *Id.* Hughes ran north up the street and rounded the corner onto a side street. There, Hughes

saw a "gentleman in a white shirt . . . [w]alking really, really fast, almost running." *Id*. at 149. Hughes picked up a blue shirt from the ground and yelled at Riddle to stop. Riddle "halfway turned around and looked, and then kept going." *Id*. at 150-51. Hughes eventually lost sight of Riddle and returned home, still in possession of the blue shirt.

[8] Soon thereafter, Detective Jonathon Simpson encountered Riddle, who matched the suspect's description. Riddle denied having been in the alley by Chatham's house and denied being in the picture taken by Russell, which Detective Simpson now had in his possession. Another officer, Patrolman Ricky Harris, went into the alley and took pictures of the children playing on the street. Officer Harris spoke with Hughes before retrieving the blue shirt and heading to Detective Simpson's location.

[9] Officer Harris picked up Riddle and returned to the alley. On the way, Riddle told Officer Harris that he had not been in the alley. Confronted with the blue shirt, Riddle stated that he was on his way to do laundry and did not have a blue shirt. After witnesses identified Riddle, he stated that he may have walked through the alley but denied masturbating. Police released Riddle to obtain an arrest warrant. Sometime later, the picture that purportedly depicted Riddle in the alley was posted onto a community Facebook page, and Riddle sent the following message asking that the post be removed:

> Hey David. There's something about this photo that bothers me. Would you please take it down? I wasn't doing what was

implied.  I was simply running.  I often use my Samsung Help to track my running.  If that's me, I was taking a break is all.

*Id.* at 158.

[10]   Riddle was arrested and charged with public indecency, a Class A misdemeanor, and performing sexual conduct in the presence of a minor, a Level 6 felony.  The State later dismissed the charge of public indecency.  A jury found Riddle guilty of performing sexual conduct in the presence of a minor.  He was sentenced to 545 days incarceration.  Riddle now appeals.  Additional facts will be provided as necessary.

## Discussion & Decision

[11]   Riddle claims that the evidence was insufficient to support his conviction.  In reviewing a challenge to the sufficiency of the evidence, this court will neither reweigh the evidence nor judge witness credibility.  *Kien v. State*, 782 N.E.2d 398, 407 (Ind. Ct. App. 2003), *trans. denied*.  Instead, we consider only the evidence which supports the conviction along with the reasonable inferences to be drawn therefrom.  *Id*.  We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt.  *Id*.

[12]   Riddle was convicted of performing sexual conduct in the presence of a minor.  Ind. Code § 35-42-4-5(c)(3) provides that "[a] person eighteen (18) years of age or older who knowingly or intentionally . . . touches or fondles the person's

own body . . . in the presence of a child less than fourteen (14) years of age with the intent to arouse or satisfy the sexual desires of the child or the older person commits performing sexual conduct in the presence of a minor, a Level 6 felony."

[13] According to Riddle, "the Record reveals that the children were unaware of the activity in the alley. Thus, the State needed to prove that [he] used the presence of the children to satisfy his sexual desires." *Appellant's Brief* at 8-9. Riddle, therefore, contends that "because the State presented no evidence that the children bore any nexus to the act which occurred in the alley, the State failed to show anything more than an act of indecency." *Id*. We disagree.

[14] I.C. § 35-42-4-5(c)(3) criminalizes sexual conduct performed in the presence of a child under the age of fourteen when the conduct was done in the presence of such a child *with the intent to arouse or satisfy the sexual desires of either the defendant or the child*. I.C. § 35-42-4-5(c)(3) (emphasis added); *see also Baumgartner v. State*, 891 N.E.2d 1131, 1138 (Ind. Ct. App. 2008). To establish that the defendant was in the presence of a child when he performed a sex act, the statute merely requires that a child under age fourteen be in the general area where the perpetrator is so that there is a reasonable prospect that children might be exposed to the perpetrator's conduct. *See Glotzbach v. State*, 783 N.E.2d 1221, 1227 (Ind. Ct. App. 2003) (interpreting statute that addressed Class D felony public indecency, finding that "for children to be present within the meaning of [the public indecency statute] they only must be in the general area in the public place where the perpetrator is so that there is a reasonable

prospect that children under sixteen might be exposed to the perpetrator's conduct"); *see also Baumgartner*, 891 N.E.2d at 1138 (applied reasoning from *Glotzbach* and found that I.C. § 35-4-2-5(c) "simply requires that a child under the age of fourteen be at the place where the defendant's conduct occurs"). The statute does not require that the child be aware of the defendant's conduct, let alone witness it. *See Baumgartner*, 891 N.E.2d at 1138 (finding that defendant was "in the presence" of children despite their lack of awareness where he masturbated while looking at two toddlers in their beds).[1]

[15] Here, the evidence presented at trial indicated that Riddle walked through a group of seven children playing on the sidewalk and then abruptly turned, crossed the street, and walked into a nearby alley. Chatham, whose home was located at the entrance to the alley, was seated on her front porch and was watching Riddle. At trial, Chatham specifically testified that when Riddle entered the alley, she got up from her chair, watched Riddle from the edge of her porch, and saw him use both of his hands to "massag[e]" his penis. *Transcript Vol. 2* at 22. She further testified that she saw the head of Riddle's penis. Chatham's boyfriend also testified that he saw Riddle in the alley with his pants unzipped and his hand on his penis, masturbating. Chatham answered in the affirmative when asked if, during the act, Riddle's body was

---

[1] To the extent that Riddle invites this court to interpret and clarify I.C. § 35-42-4-5(c)(3), we decline to do so in light of the statutory interpretation provided by this court in *Baumgartner*.

angled toward the street where the children were playing. Chatham testified that the children were playing "down to the alley" entrance. *Id*. at 16.

[16] When Riddle realized he was being watched, he left the alley. Hughes gave chase, and Riddle discarded the outer, blue shirt he was wearing. The shirt was recovered by the neighbor and given to the police.

[17] Police officers eventually located Riddle and questioned him. Riddle initially lied to the officers and told them he had not been in the alley. He also told an officer that he did not have a blue shirt and that he "was walking to do laundry." *Transcript Vol. 3* at 20.

[18] While Riddle was being questioned, a police officer arrived at the scene of the crime approximately five minutes after receiving the call from dispatch. While the officer may not have had direct knowledge as to where the children were located when Riddle was in the alley, he testified that, when he arrived, the children were present; when he went into the alley to take pictures, he could see the children from the alley; while he was in the alley, he could hear the children; and, "[the children] were noticeable." *Id*. at 15. Photographs taken by the police officer, and admitted into evidence, were taken from the vantage of the approximate location where Riddle was standing in the alley. The photographs show that the houses on the street where the children were playing and the alley that Riddle ducked into were in close proximity. Although the photographs were taken ten to fifteen minutes after the initial call was made to

the police, the jury could have inferred from the photographs that Riddle could see the children while masturbating in the alley.

[19] At trial, Riddle admitted he had been in the alley, but he testified that he went into the alley to urinate. Chatham testified repeatedly, as did other witnesses, that she did not see Riddle urinating in the alley. A police officer testified that no bodily fluids were found in the alley. Prior testimony by Riddle was read into evidence at his trial. In that testimony, Riddle stated that, at the time he claimed to be urinating in the alley, "[t]here were no kids [playing]. I would have heard them playing." *Transcript Vol. 2* at 245.

[20] It is reasonable to infer from the evidence that the children would have been able to see Riddle during his act. Likewise, the record supports the conclusion that Riddle's prurient interest was stimulated by the presence of the children and that he masturbated in the presence of the children, not far away from them and within their line of sight, which satisfies the test mentioned above that, "there is a reasonable prospect that [the] children . . . might be exposed to the perpetrator's conduct." *Glotzbach*, 783 N.E.2d at 1227. We therefore find that the State presented sufficient evidence to support Riddle's conviction.

[21] Judgment affirmed.

Najam, J., concurs.

Robb, J., dissents with opinion.

Jason Riddle,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

Court of Appeals Case No.
39A04-1712-CR-2975

**Robb, Judge, dissenting.**

[22] I respectfully dissent from the majority's conclusion that the State presented sufficient evidence of performing sexual conduct in the presence of a minor. Put simply, I believe the majority expands the definition of "in the presence of a child," the issues presented require our interpretation and clarification of Indiana Code section 35-42-4-5(c), and the State failed to present sufficient evidence that Riddle's conduct was *causally connected* to the children's presence.

# I. In the Presence of a Child

[23] Our legislature did not define "in the presence of a child" as it appears in Indiana Code section 35-42-4-5. However, as noted by the majority, a panel of this court has previously examined the definition of "present" in the similar

context of Indiana's public indecency statute, Indiana Code section 35-45-4-1.[2] *Glotzbach*, 783 N.E.2d at 1228. In *Glotzbach*, a seventeen-year-old was doing her homework in a public library when she looked up and saw a man masturbating between the book shelves. The man was later identified and convicted of public indecency as a Class D felony because it was committed "in or on a public place where a child less than sixteen years (16) years of age is present." *Id.* at 1226 (quoting Ind. Code § 35-45-4-1(b)(1)).

[24] On appeal, the defendant argued the State had failed to establish that any children were "present" at the library because there was no evidence that any children were in the immediate vicinity of where the incident occurred, and the State failed to prove that children had a "reasonable opportunity/potential to view the act." *Id.* Determining the term "present" was ambiguous, the court turned to the rules of statutory construction and looked to the dictionary, which defined the word "present" as "being at the specified or understood place; at hand; in attendance." *Id.* at 1227 (quoting Webster's New World Dictionary

---

[2] The public indecency statute in effect at the time of the crime in *Glotzbach* provided:

    (a) A person who knowingly or intentionally, in a public place:

      \* \* \*

      (3)    appears in a state of nudity; or

      (4)    fondles the person's genitals or the genitals of another person;

    commits public indecency, a Class A misdemeanor.

    (b) However, the offense under subsection (a) is a Class D felony if the person commits the offense:

      (1)  by appearing in the state of nudity with the intent to arouse the sexual desires of the person or another person in or on a public place where a child less than sixteen (16) years of age is present . . . .

1065 (3d ed. 1988)). The court then concluded that "for children to be present within the meaning of [the public indecency statute] they only must be in the general area in the public place where the perpetrator is so that there is a reasonable prospect that children under sixteen might be exposed to the perpetrator's conduct." *Id.*

Applying the foregoing definition of "present" to the facts presented, the court concluded there was sufficient evidence to support the defendant's conviction:

> Here there were children under the age of sixteen in the area of the checkout desk. There was evidence that they may have been able to see the defendant, with some difficulty through the book shelving, where he was seen by [the witness]. Further, the children's area of the library was on the same floor as the adult area where the defendant was. It was opposite the adult area on the other side of the checkout desk. There is no reason to suppose that children under sixteen would not enter the adult area from time to time, for example to consult [a library employee] as did [the seventeen-year-old witness]. Under these circumstances, children under sixteen were "present" within the statutory reach to protect such children from the potential for exposure to conduct such as the defendant's. The State need not prove that they actually witnessed the defendant's act. A contrary interpretation would bring about an absurd result, because the statute was intended to protect children under the age of sixteen from the mere potential that they might see an individual commit the act of public indecency as defined in Ind. Code § 35-45-4-1.

*Id.*

[26] Five years later, we applied *Glotzbach*'s holding to the requirement of Indiana Code section 35-42-4-5 that a sexual act be performed "in the presence of a minor." *Baumgartner*, 891 N.E.2d at 1138. In *Baumgartner*, the defendant was staying at the home of his girlfriend. Also living in the home was his girlfriend's adult daughter, Brandy, and Brandy's two young children, ages two and three. One night when Brandy went to check on her children, she saw the defendant masturbating in the children's doorway, watching the children as they slept. The defendant was charged and convicted of performing sexual conduct in the presence of a minor. On appeal, the defendant challenged the sufficiency of the evidence, claiming he did not fondle himself "in the presence" of a child because there was no evidence the children were aware of his conduct. *Id.* We looked to *Glotzbach*'s definition of "present," *see supra* ¶¶ 23-25, and, finding *Glotzbach* "directly on point," we held the statute

> does not require that the defendant's conduct be witnessed by the child or that the child be aware of the defendant's conduct. Instead, it simply requires that a child under the age of fourteen be at the place where the defendant's conduct occurs.

*Id.* We rejected the defendant's attempt to distinguish *Glotzbach* by emphasizing that his conduct was committed within the confines of a private home rather than in a public library. Besides the fact that the public indecency statute contains the element of "in a public place," Ind. Code § 35-45-4-1 (2000), which the performing sexual conduct in the presence of a minor statute does not, we explained the performing sexual conduct in the presence of a minor statute criminalizes

sexual conduct performed in the presence of a child under the age of fourteen when the conduct was done in the presence of such a child *with the intent to arouse or satisfy the sexual desires of either the defendant or the child.*

*Baumgartner,* 891 N.E.2d at 1138. Therefore, we concluded that where there was evidence that the defendant was masturbating in the presence of two children *and* watching them as they slept,

> the jury could have reasonable [sic] concluded that Baumgartner knowingly or intentionally touched or fondled his own body in the presence of a child less than fourteen years of age with the intent to arouse or satisfy his sexual desires.

*Id.* at 1138-39.

[27]   Here, the majority relies upon *Baumgartner* and *Glotzbach* for the proposition that:

> [t]o establish that the defendant was in the presence of a child when he performed a sex act, the statute merely requires that a child under age fourteen be in the general area where the perpetrator is so that there is a reasonable prospect that children might be exposed to the perpetrator's conduct.

Slip op. at ¶ 14 (citing *Glotzbach*, 783 N.E.2d at 1227; *Baumgartner*, 891 N.E.2d at 1138).

[28]   The State presented evidence Riddle passed through a group of seven children as he walked along Walnut Street before crossing the street and entering an alley. "[T]wo or three seconds" later, Chatham stood up from her chair and

walked to the edge of her porch. Tr., Vol. 2 at 21. As Chatham looked around the corner and down the alley, she saw Riddle masturbating "15 to 20 feet" away. *Id.* at 22. Chatham then entered her home to alert Russell and her two adult sons and Russell took two pictures of Riddle through the kitchen window. Sometime between the first and second picture, Riddle turned to leave the alley and returned to Walnut Street, where Hughes, the neighbor from across the street, briefly chased Riddle before abandoning the effort and retrieving Riddle's outer blue shirt which he had left behind. Riddle denied having been in the alley before admitting that he was, offering differing explanations as to why. And finally, the State presented the testimony of Officer Harris and pictures he had taken during his initial investigation.

[29] On this evidence, I believe a conclusion that Riddle "touch[ed] or fondl[ed]" his body was clearly supported. Ind. Code § 35-42-4-5(c). However, even limiting my consideration solely to that of presence, that is to say, without consideration of a causal connection which I discuss further below, *see infra* ¶¶ 32-38, I still cannot conclude the State presented sufficient evidence that Riddle was "in the presence of a child." *Id.*

[30] It remains uncontested that no children witnessed, or were near enough to witness, Riddle's conduct. Indeed, the only people who witnessed Riddle in the alley were adults. And even then, it was only after a conscious attempt to do so: Chatham walked to the edge of her porch and looked around the corner, while the remaining witnesses, who Chatham had alerted to Riddle's presence, peered through the blinds of a window. Chatham testified that the entire

event—from the time she originally saw Riddle enter the alley until the time he returned to Walnut Street—totaled less than one minute. The evidence also reveals the alley was some distance away from where Riddle had passed by the children, as Walnut Street was a two-lane street with room for street parking on both sides. Furthermore, the pictures taken by Officer Harris depicting children visible from the alley, *see* States' Exhibits 16-21, Exhibits Volume at 19-24, were taken ten to fifteen minutes after the initial call, Tr., Vol. 3 at 9, and in a location different from where Riddle had been standing with a less obstructed view, *id*. at 35. Therefore, to the extent the majority concludes the State presented sufficient evidence that Riddle with "within [the children's] line of sight," thus satisfying the test that "there [was] a reasonable prospect that [the] children . . . might be exposed to the perpetrator's conduct," slip op. at ¶ 20 (quoting *Glotzbach*, 783 N.E.2d at 1227), I disagree.

[31]     In *Baumgartner*, the defendant stood mere feet away from the children, and although they were asleep at the time, the children could easily have awoken and been exposed to the defendant's conduct.[3] *Baumgartner*, 891 N.E.2d at 1138. Similarly, in *Glotzbach,* there was evidence that children could have seen the defendant through the bookshelves, just as the seventeen-year-old who reported the crime had done. 783 N.E.2d at 1227. Both cases focus their analysis on a *reasonable prospect* that children might be exposed to the

---

[3] In *Baumgartner*, the State also presented evidence the defendant was watching the children as they slept, which, as discussed below, *see infra* ¶¶ 11-17, serves to distinguish *Baumgartner* from this case on the issue of a causal connection.

defendant's conduct and I believe the majority stretches the definition beyond those parameters. Going forward, I am left to wonder, how far away must the defendant be before he is no longer in the presence of a child?

## II. Indiana Code section 35-42-4-5(c)

[32] The majority declined Riddle's invitation to interpret and clarify Indiana Code § 35-42-4-5(c) "in light of the statutory interpretation provided by this court in *Baumgartner*." Slip op. at ¶ 14 n.1. However, I believe this case presents a different issue than addressed in *Baumgartner* and, in so doing, it exposes a meaningful distinction between the performing sexual conduct in the presence of a minor statute and the public indecency statute of *Glotzbach* upon which *Baumgartner* relied.

[33] Here, Riddle argues the statute requires the State prove more than he was simply in the presence of a child when he engaged in the underlying conduct. Brief of Appellant at 12. Specifically, Riddle argues that "the legislature presumably meant to protect children from seeing sexual conduct or from being used as sexual aids." *Id.* at 10. Therefore, according to Riddle, the statute requires a causal connection, or a "nexus," between the children and the sexual conduct. *Id.* at 12. In turn, the State contends the only "nexus" requirement is that the sexual conduct be done with the intent to arouse or satisfy sexual desires. Brief of Appellee at 15. In other words, the defendant's conduct and the presence of children is sufficient to satisfy the statute and no connection between the two is necessary. Both parties present reasonable interpretations of

the statute and therefore, to resolve this ambiguity, I turn to the rules of statutory construction.

> When faced with a question of statutory interpretation, we first examine whether the language of the statute is clear and unambiguous. If it is, we need not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings. Where a statute is open to more than one interpretation, it is deemed ambiguous and subject to judicial construction. Our primary goal in interpreting a statute is to ascertain and give effect to the legislature's intent, and the best evidence of that intent is the statute itself. We presume that the legislature intended for the statutory language to be applied in a logical manner in harmony with the statute's underlying policy and goals. Additionally, the rule of lenity requires that penal statutes be construed strictly against the State and any ambiguities resolved in favor of the accused, . . . but statutes are not to be overly narrowed so as to exclude cases they fairly cover.

*Dobeski v. State*, 64 N.E.3d 1257, 1259-60 (Ind. Ct. App. 2016) (citations and quotations omitted). Moreover, we examine the statute as a whole and avoid excessive reliance upon a strict literal meaning or the selective reading of the individual words. *Sales v. State*, 723 N.E.2d 416, 420 (Ind. 2000).

[34] "To get at the thought or meaning expressed in a statute . . . the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them." *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1176 (Ind. Ct. App. 2012), *trans. denied*. "We must give due regard to punctuation when construing a rule or

statute." *Lake Holiday Conservancy v. Davison*, 808 N.E.2d 119, 123 (Ind. Ct. App. 2004). And, we assume all language in a rule or statute was used intentionally and we should strive to give effect and meaning to all of it. *Id.* I find the statute's lack of a semicolon between "in the presence of a child less than fourteen years of age" and "with the intent to arouse or satisfy the sexual desires of the child or the older person," to be significant. Ind. Code § 35-42-4-5(c).

[35] As written, the statute reads as two dependent clauses with the latter modifying the former. In other words, the sexual conduct must have occurred "in the presence of a child less than fourteen years of age" and been done in the child's presence "*with* the intent to arouse or satisfy the sexual desires of the child or the older person." Ind. Code § 35-42-4-5(c) (emphasis added). Construing the statute in accordance with the State's argument effectively reads a semicolon into the sentence and separates the phrases as two independent clauses: (1) in the presence of child less than fourteen; and (2) with the intent to arouse or satisfy the sexual desires of the child or the older person. "A semicolon is used to join two *closely related* independent clauses." *Jackson v. State*, 29 N.E.3d 151, 154 (Ind. Ct. App. 2015) (citing Andrea Lunsford & Robert Connors, The Everyday Writer 204 (1999)). Under the State's construction, the two clauses are closely related, but not causally connected. Therefore, absent a semicolon, I believe Riddle's argument is more consistent with the statute's grammatical arrangement and use of punctuation.

[36] The statute's use of *with* also distinguishes the performing sexual conduct in the presence of a minor statute from the public indecency statute at issue in *Glotzbach*. 783 N.E.2d at 1227. Whereas the public indecency statute prohibits "appearing in the state of nudity with the intent to arouse the sexual desires of the person or another person in or on a public place *where* a child less than sixteen (16) years of age is present," Ind. Code § 35-45-4-1 (emphasis added), the performing sexual conduct in the presence of a minor statute requires the defendant's conduct occur "in the presence of a child . . . *with* the intent to arouse or satisfy the sexual desires of the child or the older person," Ind. Code § 35-42-4-5(c) (emphasis added). We interpreted the public indecency statute's use of *where* broadly, holding, "for children to be present within the meaning of [the public indecency statute] they only must be in the general area in the public place *where* the perpetrator is so that there is a reasonable prospect that children . . . might be exposed to the perpetrator's conduct." *Glotzbach*, 783 N.E.2d at 1227 (emphasis added). Our legislature could have similarly drafted the statute at issue as prohibiting its enumerated forms of conduct simply *where* a child was present. *See Day v. State*, 57 N.E.3d 809, 814 (Ind. 2016) (noting that when interpreting a statute, we heed both to what the statute says and to what it "does not say"). However, in crafting the relevant section, the legislature selected the word *with*—bringing implications of a causal connection.

[37] With that choice in mind, the primary objective of statutory construction is to give effect to the intent of our legislature. *Dobeski*, 64 N.E.3d at 1259. In so doing, we presume that the General Assembly "intended its language to be

applied in a logical manner consistent with the statute's underlying policy and goals." *State v. CSX Trans., Inc.*, 673 N.E.2d 517, 519 (Ind. Ct. App. 1996). "Words and phrases in a single section are construed together with the other parts of the same section and with the statute as a whole, in order that the spirit and purpose of the statute is carried out." *Dreiling v. Custom Builders*, 756 N.E.2d 1087, 1089 (Ind. Ct. App. 2001). Indiana Code section 35-42-4-5(c) is included in the chapter defining sex crimes, Ind. Code ch. 35-42-4, and its first two subsections, Ind. Code § 35-42-4-5(a) and (b), criminalize vicarious sexual gratification. Thus, I believe a reading of the statute as a whole also weighs in favor of a causal connection.

[38] Moreover, when a statute is reasonably susceptible to more than one interpretation, we must consider the consequences of a particular construction. *Dreiling*, 756 N.E.2d at 1089. And, we "do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015). In *Baumgartner*, we considered whether the statute was unconstitutionally vague regarding the defendant's hypothetical of parents being walked in on by their child while engaging in one of the statute's prohibited forms of sexual conduct. 891 N.E.2d at 1137. Noting that we do not entertain hypothetical situations to demonstrate unconstitutional vagueness, we nevertheless concluded that "we do not read the statute to prohibit" such conduct. *Id.* Absent public indecency's element of "in or on a public place," Ind. Code § 35-45-4-1, or a requirement of a causal connection between the presence of a child and the

defendant's conduct, I believe the majority's test from *Glotzbach* of whether "there is a reasonable prospect that [the] children . . . might be exposed to the . . . conduct," could indeed criminalize the hypothetical discussed in *Baumgartner* and lead to absurd results.[4] Finally, the rule of lenity only strengthens Riddle's argument as we are required to interpret ambiguous criminal statutes in the defendant's favor. *Day*, 57 N.E.3d at 814.

[39] In sum, I disagree with the majority's reliance on *Baumgartner* and I believe the issues presented by this case require our interpretation and clarification of Indiana Code section 35-42-4-5(c). Unlike the public indecency statute of *Glotzbach*, which was intended to protect children from "the mere potential that they might see an individual commit the act of public indecency," 783 N.E.2d at 1227, and its corresponding test applied by the majority, I believe the statute at issue here was intended to protect children from being used as sexual aids. Therefore, I conclude the State was required to present sufficient evidence Riddle's conduct was causally connected to the "presence of a child." Ind. Code § 35-42-4-5(c).

---

[4] Additionally, if a statute has two reasonable interpretations, one constitutional and the other not, we choose the interpretation that will uphold the constitutionality of the statute. *Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 349 (Ind. 2003). Although protecting children from the mere possibility of witnessing sexual conduct is a compelling governmental interest, I am not convinced this interpretation of the statute could pass constitutional scrutiny. *See Lawrence v. Texas,* 539 U.S. 558 (2003).

# III. Causal Connection

[40] Despite declining to address the parties' arguments regarding whether the statute requires a causal connection, the majority nevertheless concludes "the record supports the conclusion that Riddle's prurient interest was stimulated by the presence of the children, not far away from them and within their line of sight[.]" Slip op. at ¶ 20. As discussed above, I believe the State failed to present sufficient evidence Riddle's conduct was in the "presence of a child." Ind. Code § 35-42-4-5(c). However, even assuming that it had, I am still left unconvinced the evidence was sufficient to prove a causal connection with his conduct.

[41] In the absence of direct evidence, the majority premises its conclusion on three sources of circumstantial evidence. The first source was the Officer Harris' testimony and the pictures from his initial investigation. Again, these pictures were taken ten to fifteen minutes after the initial call, Tr., Vol. 3 at 9, and in a location different from where Riddle had been standing with a less obstructed view, *id*. at 35. The second source was Chatham's testimony and the fact that she had "answered in the affirmative when asked if, during the act, Riddle's body was angled toward the street where the children were playing." Slip op. at ¶ 15. However, of the two pictures taken by Russell and presented by the State, the first showed Riddle, with his hands concealed by the blinds of the window, looking away from the direction of the children. State's Exhibit 14, Exhibits Vol. at 17. The second showed Riddle with his hands visibly by his sides turning to exit the alley toward Walnut Street, the direction from which he had

entered. State's Exhibit 15, Exhibits Vol. at 18; Tr., Vol. 2 at 120. And Russell further testified that during this time, Riddle was looking "back and forth up and down the alley." Tr., Vol. 2 at 115. Third and finally, there was a close temporal proximity between Riddle's passage through the group of children and his entrance into the alley.

[42] Unlike *Baumgarter*, where the State presented direct evidence that the defendant was watching the children as they slept and thus demonstrating a causal connection between his conduct and their presence, 891 N.E.2d at 1138, I cannot say the limited, circumstantial evidence presented here "is substantial evidence of probative value from which a reasonable trier or fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt." *Kien*, 782 N.E.2d at 407. I would therefore reverse Riddle's conviction and remand accordingly.